KETHLEDGE, J., delivered the opinion of the court, in which SUTTON, J., joined. DAUGHTREY, J. (pp. 638-45), delivered a separate dissenting opinion.
OPINION
KETHLEDGE, Circuit Judge.
Peshtal Inc. filed a petition for an employment visa on behalf of Shashikant Patel under 8 U.S.C. § 1153(b)(3). The United States Citizenship and Immigration Services denied the petition. Patel then filed suit in federal district court under the Administrative Procedure Act, challenging the denial as arbitrary and capricious. The district court dismissed the suit for lack of prudential standing. We reverse.
I.
Under the Immigration and Nationality Act, an alien can become a permanent resident by obtaining an employment visa. Matovski v. Gonzales, 492 F.3d 722, 726-27 (6th Cir.2007). To do so, the alien must complete a three-step process. Id. at 727. First, the alien’s potential employer must apply for a labor certification from the United States Department of Labor. 8 U.S.C. § 1153(b)(3)(C); 20 C.F.R. § 656.17(a)(1). The Department will issue the certification if there are no qualified U.S. workers available for the job and the alien’s employment “will not adversely affect the wages and working conditions” of other workers. 8 U.S.C. § 1182(a)(5)(A)®.
Second, the employer must file a petition for an employment visa on the alien’s behalf with the United States Citizenship and Immigration Services (CIS). 8 U.S.C. § 1154(a)(1)(F); 8 C.F.R. § 204.5(a). For skilled workers, the CIS will approve the petition if, among other things, the employer has a valid labor certification and the alien has at least two years of relevant training or experience. 8 U.S.C. § 1153(b)(3)(A)®; 8 C.F.R. § 204.5(1).
Third, the alien must apply to adjust his status to that of a permanent resident. 8 U.S.C. § 1255; 8 C.F.R. § 245.2(a)(3)(h). The CIS will approve the application if two conditions are met: first, “the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence”; and second, “an immigrant visa is immediately available to him at the time his application is filed.” 8 U.S.C. § 1255(a).
Patel, a native and citizen of India, entered the United States on a one-year visitor’s visa in 1999. He overstayed the *635 visa and thereafter began looking for a job that would allow him to obtain an employment visa. Patel found such a job in October 2006, when Deluxe Inn offered him the position of Lodging Manager at its hotel in Lansing, Michigan. Deluxe completed the first step of the status-adjustment process by obtaining a labor certification from the Department of Labor. But Deluxe faltered at the second step: it filed a petition for an employment visa on Patel’s behalf, but the CIS denied the petition because Deluxe “was unable to pay the proffered wage.” See 8 C.F.R. § 204.5(g)(2).
Patel got a second chance in February 2010, when Peshtal Inc. offered him a job as Lodging Manager at its hotel in Richmond, Indiana. Instead of applying for its own labor certification, however, Peshtal Inc. jumped to the second step of the status-adjustment process and filed a petition for an employment visa on Patel’s behalf. In support of that petition, Peshtal Inc. attached the labor certification that Deluxe had received for the Lodging Manager position in Lansing, Michigan. The CIS denied the petition on grounds that Peshtal Inc. had failed to get its own labor certification.
Patel filed suit in federal district court under the Administrative Procedure Act, alleging that the denial of Peshtal Ine.’s petition for an employment visa was arbitrary and capricious. The government moved to dismiss for lack of prudential standing. The district court granted the motion. This appeal followed.
II.
A.
We review de novo a district court’s dismissal for lack of prudential standing. See Dismas Charities, Inc. v. U.S. Dep’t of Justice, 401 F.3d 666, 671 (6th Cir.2005).
Under the Administrative Procedure Act, a party has prudential standing if he is “adversely affected or aggrieved by agency action[.]” 5 U.S.C. § 702. A party is “adversely affected or aggrieved” if the interest he seeks to protect is “arguably within the zone of interests to be protected or regulated by the statute that he says was violated.” Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, — U.S. -, 132 S.Ct. 2199, 2210, 183 L.Ed.2d 211 (2012) (internal quotation marks omitted). In determining a statute’s zone of interests, “we do not look at [the provision at issue] in complete isolation.” Fed’n for Am. Immigration Reform v. Reno, 93 F.3d 897, 903-04 (D.C.Cir.1996) (citing Clarke v. Sec. Indus. Ass’n, 479 U.S. 388, 401-02, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987)). Instead, we look at that provision alongside any other provision that has an “integral relationship” with it, in order to “help[ ] us ... understand Congress’ overall purposes[.]” Air Courier Conference of Am. v. Am. Postal Workers Union AFL-CIO, 498 U.S. 517, 529-30, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991) (internal quotation marks omitted).
The prudential-standing test “is not meant to be especially demanding.” Patchak, 132 S.Ct. at 2210 (internal quotation marks omitted). Rather, in enacting the Administrative Procedure Act, Congress intended to “make agency action presumptively reviewable.” Id. (internal quotation marks omitted). Thus, a plaintiff lacks prudential standing only if his “interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.” Id. (internal quotation marks omitted). And because the plaintiff only needs to be “arguably” within the statute’s zone of interests, “the benefit of any doubt goes to the plaintiff.” Id.
*636 Here, Patel alleges that the CIS violated 8 U.S.C. § 1153(b)(3) when it denied the petition for an employment visa that Peshtal Inc. filed on his behalf. That provision states in relevant part: “Visas shall be made available ... to ... [qualified immigrants who are capable ... of performing skilled labor (requiring at least 2 years training or experience) ... for which qualified workers are not available in the United States.” (Emphasis added.) Given that § 1153(b)(3) expressly provides for issuance of employment visas directly to qualified aliens, it is arguable, to say the least, that a qualified alien who wants an employment visa is within that provision’s zone of interests.
The government responds .that Patel lacks prudential standing because his interests are inconsistent with the purpose of § 1153(b)(3), which the government says is the protection of U.S. employers and workers. But it is folly to talk about “the purpose” of the statute when the statute reflects a compromise between multiple purposes. One can speculate that Congress meant to exclude certain aliens to protect American workers, and admit other, “qualified” aliens to help American employers. But there is no basis in the text of the statute — none—to conclude that Congress was completely indifferent to the interests of the “qualified immigrants” themselves. To the contrary, § 1153(b)(3) makes employment visas available to the immigrant, rather than his employer, which suggests that Congress gave the immigrant, too, a stake in whether he gets a visa. Simply stated, under § 1153(b)(3) it is the alien, not the employer, who is entitled to an employment visa; and that makes unavoidable the conclusion that the alien’s interests are among those “protected or regulated by the statute[.]” Patchak, 132 S.Ct. at 2210.
Two other provisions corroborate this conclusion. First, 8 U.S.C. § 1255(b) provides that an alien whose petition is approved under § 1153(b)(3) becomes eligible for a permanent visa, rather than a temporary one. If § 1153(b)(3) provided employment visas only for the benefit of U.S. employers (as the government contends), it would be unnecessary to give the alien a permanent visa; instead, a visa that lasted as long as the employer needed the alien’s services would do. That Congress rejected that approach in § 1153(b)(3) suggests that the provision protects the interests of aliens as well as employers.
Second, the so-called “portability provisions” — 8 U.S.C. § 1154(j) and 8 U.S.C. § 1182(a)(5)(A)(iv) — likewise reflect a congressional intent to protect the interests of qualified aliens. Before Congress enacted these provisions, an approved petition for an employment visa was valid only so long as the alien stayed with the employer that filed it. Thus, if an alien who had an approved petition wanted to change jobs, he would need to start the whole status-adjustment process over again. Because of the portability provisions, however, the alien’s petition “remain[s] valid with respect to a new job” under certain circumstances. 8 U.S.C. § 1154(j).
All of these provisions make this case distinguishable from others where the plaintiff lacked prudential standing under the APA. Typically, those cases involved “a provider of government services challeng[ing] the reduction of benefits to a third party because the reduction decreases the demand for the provider’s services.” Dismas Charities, 401 F.3d at 675. Thus, for example, the Supreme Court said that a transcript preparer would lack prudential standing to challenge an agency’s refusal to hold its hearings on the record. See Lujan v. Nat’l Wildlife Fed’n, 497 U.S. 871, 883, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). This court held that a halfway house lacked prudential standing to chai *637 lenge the Department of Justice’s decision to reduce the number of prisoners that it placed in halfway houses. See Dismas Chanties, 401 F.3d at 675. And the Third Circuit held that an employment agency lacked prudential standing to challenge a decision by the Secretary of Labor that reduced the number of aliens that could enter the country. See Intercontinental Placement Serv., Inc. v. Shultz, 461 F.2d 222, 223 (3d Cir.1972) (per curiam). We have nothing of the sort here: Patel challenges the denial of a benefit that, per the statute’s terms, would have gone directly to him.
Of far greater relevance are decisions by three other circuits that hold, on materially indistinguishable facts, that an alien has prudential standing under the APA to challenge the denial of his employer’s petition for an employment visa. In De Jesus Ramirez v. Reich, 156 F.3d 1273 (D.C.Cir.1998), the court held that “aliens are obviously regulated by the statute” and that “neither the statute’s text, structure, nor legislative history supplies the requisite clear and convincing evidence of a preclusive purpose.” Id. at 1276 (internal quotation marks omitted). In Taneja v. Smith, 795 F.2d 355 (4th Cir.1986), the court held that the alien “was in the ‘zone of interest’ of the statute and had standing to challenge” the denial of his prospective employer’s visa application. Id. at 358 n. 7.
In Stenographic Machines, Inc. v. Regional Administrator for Employment and Training, 577 F.2d 521 (7th Cir.1978), the court rejected the amorphous “purpose” argument that the government again advances here. There, the government argued that a predecessor skilled-worker visa provision, 8 U.S.C. § 1182(a)(14), “was intended to protect the American labor market and not foreign laborers.” Id. at 528. Thus, the government said, the alien’s interest in the petition for an employment visa that his prospective employer had filed on his behalf “is not within the zone of interests ‘protected’ by the statute[.]” Id. The Seventh Circuit disagreed. The court first noted that the Supreme Court has phrased the relevant test in the disjunctive — “a plaintiffs interest must be arguably within the zone of interests to be protected or regulated by the statute[,]” id. (emphasis in original; internal quotation marks omitted) — and then concluded that “the prospective alien employee” had an interest “within the zone of interests to be regulated.” Id. The court also held that, “even if [the alien] had to show that his interest is within the zone of interests to be protected by the statute ... [the alien] would have standing.” Id. (emphasis in original). The court’s reasoning was straightforward: true, the immigration statute was designed in part “to protect American workers”; but the provisions allowing the admission of qualified aliens were “intended at least in part for the protection of aliens who are arguably entitled to enter or remain in the United States on the basis of those standards.” Id.
Disembodied notions of statutory purpose cannot override what the statute actually says. What § 1153(b)(3) says is that the alien, ultimately, is the one who is entitled to the employment visa. The alien’s interest in receiving it is therefore within the zone of interests protected or regulated by the statute. Patel has prudential standing to challenge the denial of his prospective employer’s petition for an employment visa.
B.
The district court did not decide whether Patel had constitutional standing, but it suggested that he might not. Given that the process for Patel’s application (and litigation) has already dragged on for years, we decide the issue here. To estab *638 lish constitutional standing, Patel must prove that he suffered an injury in fact that is fairly traceable to CIS’s conduct and redressable by a favorable decision. See Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130. Patel has suffered an injury that is fairly traceable to CIS: the loss of an opportunity to become a permanent resident. The issue is whether that injury is redressable in this lawsuit.
The government argues it is not. Even if the petition’s denial is set aside, the government says, it still must approve Patel’s application for an adjustment of status. The government suggests that might not happen, in which case this suit would not redress Patel’s injury. But the government misunderstands what that injury is. Patel “lost a significant opportunity to receive an immigrant visa” when the CIS denied Peshtal Inc.’s petition on grounds that Patel says were arbitrary. Abboud v. INS, 140 F.3d 843, 847 (9th Cir.1998). That lost opportunity is itself a concrete injury- — -and a favorable decision would redress it. Indeed, the record reflects that Peshtal Inc.’s offer of employment to Patel remains open, and the government (to its credit) conceded during oral argument that CIS could grant Peshtal Inc.’s petition if (as Patel contends) the petition’s denial was arbitrary and capricious. Patel thus has constitutional standing.
C.
The government also argues that Peshtal Inc.’s failure to appeal the denial of its petition on behalf of Patel means that it has abandoned its petition, which the government says would make this case moot. But “[w]e doubt that the district court can presume, as a matter of law, that the employer abandoned the [petition] solely because the employer failed to appeal[.]” De Jesus Ramirez, 156 F.3d at 1277. To the contrary, Peshtal Inc. specifically confirmed to the district court that its employment offer to Patel “[was] still open and [would] continue to be open for the indefinite future.” Moreover, if Patel were to prevail on his underlying lawsuit, the district court would be required to hold the petition’s denial unlawful and set it aside. See 5 U.S.C. § 706(2)(A). That would restore the status quo ante with respect to the petition, and make irrelevant Peshtal Ine.’s failure to appeal the denial.
D.
Finally, having determined that Patel had both prudential and constitutional standing in this case, we decline to go further and address the merits of his claim. The dissent notes that in three cases cited in this opinion the appellate courts answered the prudential standing question and “went on to hold ... that the alien-worker plaintiffs were not entitled to relief on the merits.” Dissenting Op. at 645. But in two of these three cases, the district court had already reached the merits of the plaintiffs’ claims. See De Jesus Ramirez, 156 F.3d at 1277; Taneja, 795 F.2d at 356. The district court did not do so here, and we therefore leave these arguments for that court’s consideration on remand.
We reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.