14-2476-cv
Mantena v. Johnson

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2015

(Argued: August 18, 2015          Decided: December 30, 2015)

Docket No. 14-2476-cv

─────────────────────────────

GANGA MANTENA,

*Plaintiff-Appellant*,

─ v. ─

JEH JOHNSON, Secretary, U.S. Department of Homeland Security; LEON
RODRIGUEZ, Director, U.S. Citizenship and Immigration Services; MARK J.
HAZUDA, Director of the Nebraska Service Center, U.S. Citizenship and Immigration
Services

*Defendants-Appellees*,

─────────────────────────────

Before: CALABRESI, STRAUB, and POOLER, *Circuit Judges*.

Appeal from the judgment of the United States District Court for the Southern District

of New York (Schofield, *J.*), a) dismissing, for lack of subject matter jurisdiction,

Plaintiff-Appellant Ganga Mantena's statutory and regulatory procedural claims

against the government and b) granting judgment on the pleadings on related

constitutional claims. The relevant claims before us pertain to the asserted lack of

adequate notice before the revocation of her original employer's immigrant visa petition (I-140).

Mantena had availed herself of the Immigration and Nationality Act's so-called "portability" provisions, 8 U.S.C. § 1154(j) and 8 U.S.C. § 1182(a)(5)(A)(iv), to move to a successor employer while continuing in her application for adjustment of status to permanent residency (I-485). The original petitioning employer, for whom Mantena no longer worked, had filed the requisite I-140 petition and was the only party to receive notice of both the intent to revoke the I-140 petition and the ultimate revocation of that petition. This employer neither responded to the notice nor informed Mantena or Mantena's successor employer of that notice.

We vacate the judgment of the district court and hold that it possessed subject matter jurisdiction to consider Mantena's dismissed notice claims. We also conclude that Congress's alteration of the statutory scheme governing the pursuit of permanent residency by employer-sponsored immigrants, through the passage of the portability provisions, requires that pre-revocation notice be given either to the beneficiary or to the successor employer even though they were not the original petitioning parties. And we remand for further proceedings consistent with this opinion.

Joseph C. Hohenstein, Law Office of Joseph Hohenstein, Philadelphia, PA, *for Plaintiff-Appellant*

Christopher Connolly, Benjamin H. Torrance, Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, NY, *for Defendants–Appellees*.

Leslie K. Dellon (Mary Kenney, on the brief), American Immigration Council, Washington, DC; (Russell R. Abrutyn, on the brief), American Immigration Lawyers Association, Troy, MI; (Ilana Etkin Greenstein, on the brief), Macias, Greenstein & Kaplan, East Boston, MA; *for Amici Curiae* American Immigration Council and American Immigration Lawyers Association, in support of *Plaintiff–Appellant*.

GUIDO CALABRESI, *Circuit Judge*:

Much of our Court's recent docket has been consumed with poor, often *pro se*, immigrants who lack, but hope to obtain, legal status. The current case addresses a differently situated immigrant with parallel aspirations. Ganga Mantena, a relatively affluent and skilled computer programmer, legally arrived in the United States on an H1-B visa and pursued employment-based status adjustment to permanent residency, colloquially known as a "green card." Mantena's pursuit occurred with benefit of counsel and, by the time of this appeal, of knowledgeable *amici curiae* as well.

Shortly after her arrival, Mantena's original petitioning employer filed an alien labor certification for Mantena with the Department of Labor, followed by an I-140 "Immigrant Petition for Alien Worker" with the United States Citizenship and

Immigration Service (USCIS), in accordance with the relevant provisions of the Immigration and Nationality Act (INA). Pursuant to the INA, Mantena then filed for adjustment of status to obtain a green card. Mantena subsequently took advantage of recent federal legislation intended to increase the job flexibility of workers, the so-called "portability" provisions of the American Competitiveness in the 21st Century Act of 2000, 8 U.S.C. § 1154(j) and 8 U.S.C. § 1182(a)(5)(A)(iv). These provisions allow an individual to change jobs or employers while preserving the validity of not only the individual's application for adjustment of status but also the underlying immigrant visa petition and alien labor certification filed by the earlier employer.

Understandably, Mantena remained sanguine about her adjustment process. It turned out, however, that there were serious problems in the visa petition, filed by the employer for whom she no longer worked, that underlay the green card application. This employer pleaded guilty to mail fraud in connection with an immigration petition filed on behalf of a different employee. USCIS subsequently decided to initiate the revocation of all petitions filed by the employer, asserting that all such petitions might be fraudulent. But neither Mantena nor her new employer was informed of any of this.

By the time Mantena heard of her original employer's immigrant petition revocation, her green card application had been automatically denied. Indeed, it was this denial that purportedly gave her notice of the I-140 revocation. Multiple appeals and legal challenges later, her case is now before us.

4

Mantena's case illustrates the importance of notifying affected parties of material changes in their proceedings and statuses and of giving them an opportunity to respond. This is true for any legal proceeding, but is a particular and continuing concern for immigrants throughout the multistep administrative process. The questions before us are, however, whether such notification is required by law and, if it is, where jurisdiction lies and who has standing to enforce that requirement.

The district court dismissed Mantena's statutory and regulatory notice claims on jurisdictional grounds. It dismissed her constitutional due process claim for failure to identify a protected interest. We disagree with respect to jurisdiction over these claims and we envision no problems regarding Mantena's standing to bring her claims. We also conclude that timely notice, the lack of which occurred because of unintended cracks between new congressional legislation and old regulations, is required by the amended statutory scheme. Accordingly, we decline to address the constitutional claim. We remand for supplemental briefing to establish more precisely which parties, in addition to the original petitioner of the immigrant visa, are entitled to notice pertaining to a visa petition's revocation.

## BACKGROUND

**Statutory Scheme**

The INA allows for a certain number of immigrants to receive permanent residency through employer sponsorship. For an employer-sponsored immigrant who

is already in the United States, there is a three-part process for receiving permanent residency. First, the Department of Labor (DOL) must issue an alien labor certification to the immigrant's employer. (This certification states that the labor market can absorb the immigrant without affecting other workers' wages. *See* 8 U.S.C.§ 1182(a)(5)(A)(i).) Second, USCIS must approve the employer's immigrant visa petition (Form I-140). *See* 8 U.S.C. § 1154(a)(1)(F); 8 C.F.R. § 204.5(a). Third, the immigrant must obtain approval of her own 1-485 application for adjustment of status. 8 U.S.C. § 1255(a); 8 C.F.R. § 204.5(n)(1).

This final step cannot take place until a permanent residency visa is available for the immigrant. 8 U.S.C. § 1255(a)(3). Because there are limits on the number of such visas in each category and from each country, immigrants must often wait many years for a permanent residency visa, especially if they are from a country, like India, that sends a large number of immigrants to the United States. *See* U.S. Dep't of State, Bureau of Consular Affairs, *Visa Bulletin*, Dec. 2015. The immigrant's place in line is set by the date that her alien labor certification was granted: her "priority date." 8 U.S.C. § 1153(e)(1). If her I-485 is approved, the alien becomes a lawful permanent resident and obtains a green card. As noted above, both a valid alien labor certification and a granted I-140 petition are prerequisites for an I-485 application to be granted.

Originally, the alien labor certification and I-140 petition were only valid while the applicant worked for the employer that had petitioned for and obtained both forms.

6

The American Competitiveness in the 21st Century Act of 2000 (AC-21), Pub. L. 106-313, 114 Stat. 1251, however, created more flexibility for prospective immigrants. It included, among other provisions, "portability" provisions that state that if an individual's application for adjustment of status has remained unadjudicated for 180 days, the immigrant visa petition on her behalf will remain valid if she changes jobs or employers, so long as the job is in the same or a similar occupational classification as her original job. 8 U.S.C. § 1154(j); AC-21 § 106(c)(1). The alien labor certification similarly remains valid for such an individual. 8 U.S.C. § 1182(a)(5)(A)(iv); AC-21 § 106(c)(2).

In essence, Congress's amendment of the INA with AC-21's job flexibility "portability" provisions made clear that the adjustment of status process was no longer tied to a single employer during the time that the alien waits for a permanent residency visa to become available. Under AC-21, the employer who takes steps one and two, the alien labor certification and petition for an immigrant visa, can differ from her employer at step three, when the immigrant is granted adjustment of status and a green card.[1]

---

[1] The government, in its brief, imprecisely describes the three-part process as applying when "a United States employer seeks to permanently employ a non-citizen" and then proceeds to characterize the first step as when "*the* employer must apply for an Alien Labor Certification." Gov't Brief – 4 (emphasis added). As described above, after AC-21, the implication that the "employer" is necessarily one entity throughout the entire process no longer holds true.

7

**Facts**

Plaintiff Ganga Mantena is a citizen of India who first entered the United States in 2000 on an H1-B visa petition filed by an initial employer. In 2003, she left that initial employer and joined Vision Systems Group, Inc. (VSG), which obtained a new H1-B visa on Mantena's behalf and agreed to sponsor her for a green card.

VSG obtained an alien labor certification for Mantena in early 2006 and its petition on her behalf was also approved later that year. In July 2007, Mantena filed an I-485 application for adjustment of status to permanent residency. Because of the large number of employment-based permanent residency visa petitions for immigrants from India, her application was not reviewed for many years.[2]

At the end of 2009, two years after filing her 1-485, Mantena availed herself of the AC-21 "portability" provisions. There is no dispute that, at the time, Mantena met both statutory criteria for portability. She had an unadjudicated I-485 for the required amount of time, and her new job paralleled her old job. Mantena sent a letter to USCIS notifying the agency of her change in employment and requesting a continuation of her I-485 processing. She also included a letter from her successor employer, CNC Consulting, Inc., entitled "Request to Substitute Successor Employer Pursuant to Section 106(c) of AC-21." This letter documented that Mantena's position with CNC

---

[2] Mantena was sponsored specifically for an employment-based, second preference (EB-2) visa. Visas in this category with Mantena's priority date began to be granted in October 2015. *Compare* U.S. Dep't of State, Bureau of Consular Affairs, *Visa Bulletin*, Oct. 2015 *with* U.S. Dep't of State, Bureau of Consular Affairs, *Visa Bulletin*, Nov. 2015.

was similar to her position with VSG and that her I-485 had been pending for more than 180 days.

*The Fraud*

Nearly a year after Mantena left VSG for her new job, the president of VSG pleaded guilty to mail fraud in connection with an immigration petition filed on behalf of a different VSG employee. As a consequence, USCIS, believing that all VSG's petitions "may be fraudulent," initiated the revocation of all petitions filed by VSG and its associated entities.[3] App. 119.

On June 28, 2012, USCIS sent a Notice of Intent to Revoke (NOIR) Mantena's I-140 petition to VSG. The notice stated that "VSG's admission to fraud cast doubt on the reliability of information" contained in VSG's filings. USCIS gave VSG thirty days in which to submit evidence in support of the I-140 petition and in opposition to the revocation.

The NOIR was sent only to VSG, which Mantena alleges was no longer in business at the time. In any event, the company neither responded nor informed

---

[3] VSG's fraudulent conduct similarly constitutes the genesis of a case working its way through our sister circuit and raising the same issue of a post-porting beneficiary's original I-140 revocation notice rights. *Musunuru v. Holder*, 81 F. Supp. 3d 721 (E.D. Wis. 2015). The district court in *Musunuru* found, as we do here, that USCIS's procedural compliance was subject to judicial review, even if the substantive revocation was not, and that the alien possessed both Article III and prudential standing. It concluded, however, that employee beneficiaries, including post-porting employees, are not entitled to pre-revocation notice. *Id.* at 727-28. Musunuru's appeal is currently before the Seventh Circuit.

Mantena of the NOIR. And, on October 19, 2012, USCIS revoked Mantena's I-140 petition. Mantena, who by this point had not worked for VSG for three years, was given no notice of the revocation.

Because the approval of the I-140 petition filed on Mantena's behalf was no longer considered valid, USCIS denied Mantena's I-485 adjustment-of-status application on November 20, 2012. This appears to be the first Mantena heard of any problems.[4] In its I-485 denial, USCIS explained that "the approval of [the I-140] visa petition has been revoked . . . on the basis of fraud and misrepresentation." App. 57.

*Administrative Appeals*

Mantena filed multiple motions seeking to have the I-485 denial reopened and reconsidered and the I-140 revocation reversed. On the final motion, USCIS rendered a comprehensive decision denying the motion.[5]

In its denial, USCIS first rejected Mantena's attempts to reopen the revocation of the I-140 petition. Citing 8 C.F.R. § 103.3(a)(1)(iii)(B), which states that the beneficiary of a visa petition is not an "affected party" for the petition, USCIS maintained that Mantena, as such a beneficiary, does "not have standing to reopen [the I-140

---

[4] While it is not clear from the record when she first heard of the revocation, Mantena asserts that she learned of the I-140 revocation only by filing a Freedom of Information Act (FOIA) request on February 15, 2013.
[5] In doing so, USCIS acknowledged that an earlier dismissal, based on Mantena "neither provid[ing] new evidence, provid[ing] precedent decisions to consider, nor establish[ing] that the decision was incorrect based upon the evidence of record at the time," Administrative Record (A.R.) 592, was "not entirely correct," App. 92.

revocation], *nor does AC21 [the portability amendments] create such a standing or transfer the petitioner's rights to [Mantena].*" App. 94-95 (emphasis added).

Relying on 8 C.F.R. § 103.2(b)(16)(i), USCIS further rejected Mantena's contention that USCIS was obligated to give her notice of the adverse information underlying the I-140 revocation before rejecting Mantena's I-485 adjustment application. USCIS took the position that because VSG, the "affected party," was advised of the adverse information, the notification requirements of 8 C.F.R. § 103.2(b)(16) were met.

*District Court*

Mantena filed this lawsuit in the Southern District of New York challenging both USCIS's revocation of the approved I-140 petition and the subsequent denial of her I-485 application. These actions, she asserted, violated the agency's own regulations and deprived her of constitutional due process rights.[6] She also sought attorney's fees. The government moved to dismiss Mantena's complaint for lack of subject matter jurisdiction as to the I-140 denial, Fed. R. Civ. P. 12(b)(1), and moved for judgment on the pleadings pursuant to Rule 12(c) on the remaining claims.

The district court dismissed Mantena's nonconstitutional claims for lack of subject matter jurisdiction, acting *sua sponte* with respect to her I-485 claim. The District

---

[6] Mantena actually began this suit before USCIS responded to her final motion to reopen which had challenged USCIS's earlier denial. After receiving USCIS's final decision, she filed an amended complaint, which is before us.

11

Court also granted judgment on the pleadings against Mantena on her due process claim and on her claim for fees.

Mantena filed a timely appeal.

**DISCUSSION**

When this Court reviews the dismissal of a complaint for lack of subject matter jurisdiction, "we review factual findings for clear error and legal conclusions *de novo*, accepting all material facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Id.* (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir.2005)). We review *de novo* a district court's dismissal of a suit pursuant to a motion for judgment on the pleadings. *See King v. Am. Airlines, Inc.*, 284 F.3d 352, 356 (2d Cir. 2002); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Burnette*, 192 F.3d at 56.

**I**

At the outset of our review are two questions: (1) whether the INA's jurisdiction-stripping statutory provisions, 8 U.S.C. § 1252(a)(2)(B)(i)-(ii), preclude judicial review of claims alleging procedural deficiencies by USCIS in decisionmaking made pursuant to the Secretary's statutory discretion; and (2) although the district court dismissed this lawsuit based on question (1) without reaching this issue, whether Mantena has standing to bring these procedural claims.

**A. Subject Matter Jurisdiction**

The INA strips district courts of subject-matter jurisdiction over several defined categories of immigration decisions, among them, with certain exceptions, "any . . . decision or action of . . . the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of . . . the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). The district court interpreted this provision to apply to all aspects of the revocation of the I-140 immigrant petition and the denial of the I-485 adjustment-of-status application, including the procedures by which those decisions are made.

As discussed below, we hold that the district court was in error. Although the statute strips jurisdiction over a substantive discretionary decision, section 1252 does not strip jurisdiction over procedural challenges. And, as Mantena contends, USCIS

13

erred procedurally as it a) violated its own regulations by providing insufficient notice of the revocation to VSG (the initial petitioner) and b) failed to give notice of the revocation either to her or to her new employer.

The district court held that revocation of an employment visa petition—such as occurred here—is in the discretion of the Secretary of Homeland Security, thereby stripping the court of jurisdiction. The revocation statute, 8 U.S.C. § 1155, provides: "The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any [I-140] petition . . . ." Examining this language, we have stated, in dicta, that "the substance of the decision that there should be a revocation is committed to the discretion of the [Secretary]." *Firstland Int'l, Inc. v. U.S. I.N.S.*, 377 F.3d 127, 131 (2d Cir. 2004).[7] Most of our sister circuits, with only the Ninth Circuit disagreeing, have held that the statute confers discretion to the Secretary. *See Karpeeva v. U.S. Dep't of Homeland Sec. Citizenship & Immigration Servs. ex rel. DHS Sec'y*, 432 F. App'x 919, 924—925 (11th Cir. 2011); *accord Green v. Napolitano*, 627 F.3d 1341, 1344–46 (10th Cir. 2010); *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009); *Ghanem v. Upchurch*, 481 F.3d 222, 224–25 (5th Cir. 2007); *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 205 (3d Cir. 2006); *El–Khader v. Monica*, 366 F.3d 562, 567 (7th Cir. 2004). *But see ANA Int., Inc. v. Way*, 393 F.3d 886 (9th Cir. 2004) (finding restrictions on the Secretary's discretion).

---

[7] At the time of *Firstland*, the discretion lay with the Attorney General, but it now lies with the Secretary of Homeland Security. 8 U.S.C. § 1155.

14

But the actual issue here is a different one. Regardless of whether the substantive revocation decision is shielded from judicial review, no party has provided authority to suggest that the *procedure* surrounding the substantive decision is similarly shielded. We hold that it is not, particularly where the procedural requirements are codified in statute or in regulations.

"It is an abecedarian principle of administrative law that agencies must comply with their own regulations." *Manguriu v. Lynch*, 794 F.3d 119, 122 (1st Cir. 2015). "This principle is applicable in the context of proceedings to revoke a visa petition." *Id.* Accordingly, our Court has held that compliance with regulations establishing procedural requirements is "not within the discretion of the Attorney General," so the INA's jurisdiction-stripping provision does not apply. *Sharkey v. Quarantillo*, 541 F.3d 75, 86 (2d Cir. 2008). Similarly, the Eleventh Circuit, also considering an I-140 revocation, has noted that if "USCIS failed to follow the correct procedure in revoking the I–140 petitions, that failure was not within USCIS's discretion." *Kurapati v. U.S. Bureau of Citizenship & Immigration Servs.*, 775 F.3d 1255, 1262 (11th Cir. 2014). "Section 1252(a)(2)(B)(ii) thus does not prevent judicial review of the conduct of the administrative proceedings." *Id.* [8]

---

[8] In contrast, the Eighth Circuit has for some time seemingly taken the position that where the statute places the substance of a decision in the Attorney General's discretion, "regulations or agency practice will not make the decision reviewable." *Rajasekaran v. Hazuda*, 806 F.3d 1142, 1145 (8th Cir. 2015) (internal quotation mark omitted) (quoting *Abdelwahab v. Frazier*, 578 F.3d 817, 821 n. 6 (8th Cir. 2009)). Accordingly, in *Rajasekaran*,

15

Indeed, our own decision in *Firstland* stands for the principle that the Secretary may well not have complete discretion over the *procedure* for making a decision, even if the *substantive* decision falls within his discretion. In that case, we addressed a since-repealed statutory provision that required notice before a revocation could occur. That notice requirement bound the discretion of the Attorney General's revocation decision: "[A]lthough the *substance* of the decision that there should be a revocation is committed to the discretion of the Attorney General . . . mandatory notice requirements . . . must be met in order for the revocation to be effective, and courts retain jurisdiction to review whether those requirements have been met." *Firstland*, 377 F.3d at 130 (emphasis added).

The government urges us not to follow *Firstland* and *Kurapati* because Mantena does not identify a statute or regulation that explicitly supports her right to notice. Given that absence, the government contends, the process must be discretionary. This argument is unavailing. First, it ignores the fact that Mantena challenges the sufficiency of notice to VSG, a notice that is explicitly required by regulation. Moreover, and more important, a court cannot determine whether USCIS complied with the procedural requirements of the applicable regulations and statutes without determining what these

---

the Eighth Circuit has very recently held that a district court lacks jurisdiction to consider whether USCIS failed to comply with regulatory procedural requirements prior to revoking a post-porting beneficiary's I-140 visa petition. *Rajasekaran*, 806 F.3d at 1145.

statutes and regulations require. And it is precisely a determination of what the relevant statutes and regulations mandate that Mantena seeks.

It follows that, even if no notice requirements were ultimately found to exist, the district court would still have been wrong to dismiss the case for lack of subject matter jurisdiction. The proper course, under such circumstances, would be to find subject matter jurisdiction and then (as the government also argues) find that the plaintiff had no right to the asserted procedural safeguards, and, therefore, had provided no claim upon which relief could be granted.[9]

Finally, the government argues that the repeal of the particular statutory notice requirement at issue in *Firstland* indicates a congressional intent to leave all procedures in the discretion of the Secretary. In 2004, Congress did in fact remove a particular notice requirement obliging USCIS to provide notice of revocation to specific alien beneficiaries of immigrant visa petitions before those aliens commenced their journey to the United States. *See* Intelligence Reform & Terrorism Prevention Act of 2004, Pub. L. No. 108–458, 118 Stat. 3638, § 5304(c). But the deletion of this specific statutory notice requirement applicable only to a subgroup of revocations cannot be read as evincing an intent to abrogate all other notice requirements.

---

[9] The government further argues that the jurisdiction-stripping statute's inclusion of the words "or action," not just "decision," indicates congressional intent to remove jurisdiction over all questions arising from a discretionary decision, both procedural and substantive. This reading, however, runs counter to the approach we took in *Firstland*, to which we adhere today.

If Congress wishes to grant the Secretary full discretion to use whatever procedures he wishes, including arbitrary ones, it must say so explicitly. It cannot simply assume that courts will read the abrogation of a particular notice requirement as making a much broader and dramatic change by implication. *See Furlong v. Shalala*, 238 F.3d 227, 233 (2d Cir. 2001) (noting the rebuttable presumption that Congress intends judicial review of administrative action).

We therefore conclude that the district court had jurisdiction to determine whether USCIS complied with those procedural requirements, including notice, that were mandated before it could revoke Mantena's employer's I-140 petition. We appreciate the possibility that even had whatever notice was required been given, Mantena's fate might have been the same, and that, at that point, the substance of the revocation might be exempt from judicial review. But we hold that such a possibility does not change the procedural requirements of the revocation or Mantena's ability to challenge, in federal court, whether those requirements were met.

The district court's dismissal, on subject matter jurisdiction grounds, of Mantena's claims pertaining to her I-485 is similarly misguided. Even the government concedes on appeal that "the district court had jurisdiction to review Mantena's I-485 claims." Gov't Brief – 23, n.8. The discretionary power to deny an I-485 application, rooted in 8 U.S.C. § 1255, clearly lies within the jurisdiction-stripping language of 8 U.S.C. § 1252(a)(2)(B). This reads: "[N]o court shall have jurisdiction to review (i) any

18

judgment regarding the granting of relief under section . . . 1255 of this title . . . ." 8 U.S.C. § 1252(a)(2)(B)(i). Yet, again, as in the I-140 case, and for analogous reasons, although the substantive revocation power is shielded from judicial review, the same cannot be said of the procedural requirements that led to the revocation.

**B. Standing**

The government vigorously contests Mantena's standing to address the sufficiency of the notice that was given to VSG, Mantena's former employer. Since the district court dismissed the case pursuant to a lack of subject matter jurisdiction, it did not reach the question of standing. In the interest of judicial economy on remand, however, we reach the issue and hold that Mantena has Article III and prudential, as well as statutory, standing to raise her claims in the federal courts.

**1.**

To have Article III standing, Mantena must demonstrate: (1) an injury-in-fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that can likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Mantena pled an injury-in-fact that would be traceable to failed notice. The revocation of Mantena's employer's I-140 petition (and subsequent automatic denial of her I-485 application) ended Mantena's multiyear attempt to secure a green card. If VSG was the only party entitled to notice of Mantena's I-140 revocation, then even

19

inadequate notice to VSG would have foreclosed any opportunity for Mantena to be notified and to provide evidence to USCIS in opposition to the revocation of VSG's I-140 petition. Similarly, if Mantena or perhaps her successor employer had been notified of the impending revocation, she would have had an alternative means to be aware of and challenge the pending revocation, regardless of whether VSG's notice was adequate. But neither Mantena nor CNC were notified. It follows that Mantena suffered an injury-in-fact, from a holding that only VSG had a right to notice.

As for redressability, even if USCIS ultimately decides not to grant Mantena a green card, the "lost opportunity is itself a concrete injury—and a favorable decision would redress it." *Patel v. U.S. Citizenship & Immigration Servs.*, 732 F.3d 633, 638 (6th Cir. 2013). *See also Abboud v. I.N.S.*, 140 F.3d 843, 847 (9th Cir. 1998) ("This lost opportunity represents a concrete injury to Abboud that is traceable to [USCIS's] conduct and remediable by a favorable decision in this case."); *Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Sec.*, 783 F.3d 156, 161-62 (3d Cir. 2015) (finding constitutional and statutory standing to challenge I-360 revocation and noting that redressability, "in the context of multi-part proceedings" should be based on the "availability of relief at a given step, rather than the likelihood of achieving the ultimate goal").

**2.**

Prudential standing may impose two additional limitations to the constitutional requirements: "the general prohibition on a litigant's raising another person's legal rights [and] the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (internal quotation mark omitted).[10]

The continued viability of these prudential standing factors, has, however, been questioned. In passing, the Supreme Court has recently said that a court "cannot limit a cause of action that Congress has created merely because 'prudence' dictates." *Id.* at 1388. But because Mantena satisfies the two traditional requirements of prudential standing, we need not address the continued viability of these requirements. Mantena's claims cannot be considered "generalized grievances" nor is the bar on a litigant's raising another person's legal rights implicated. Again, had Mantena or her successor employer been notified of the impending revocation, a court might have rightfully expressed concern regarding Mantena's "raising another person's [VSG's] legal rights." But this concern is inapplicable here.

---

[10] In *Lexmark,* the Supreme Court removed a third requirement from the standing analysis: that the plaintiff fall within the zone-of-interests of a statute. The Court defined the zone of interests test as a merits question concerning the definition of the cause of action, *id.* at 1391 n.6, and not a standing issue.

**3.**

The government argues, apart from constitutional and prudential standing, that the regulations also deprive Mantena of standing in federal court. At the end of Mantena's administrative appeals, in its final decision to Mantena, USCIS wrote that "[a]s the beneficiary, you are not an 'affected party' in that matter [of the I-140 revocation] and do not have standing to reopen it, nor does AC21 create such a standing or transfer the petitioner's rights to you." App. 94-95. USCIS based its conclusion on the following regulation:

> "For purposes of this section and §§ 103.4 and 103.5 of this part, affected party (in addition to the Service) means the person or entity with legal standing in a proceeding. It does not include the beneficiary of a visa petition."

> 8 C.F.R. § 103.3(a)(1)(iii)(B).

Significantly, however, this regulation was promulgated a decade prior to Congress's passing of AC-21 in 2000. *See* Appeals, Precedents, Certifications and Motions, 55 Fed. Reg. 20,767, 20,769 (May 21, 1990). And the Federal Register notice from 1990 explains the beneficiary's exclusion from the definition of "party" by noting that "a visa petition proceeding has long been a proceeding between the petitioner and the Service." *Id.* at 20,768. Consequently, it declares that "[t]he beneficiary of the petition does not have any standing in such a proceeding." *Id.* The Federal Register then cites to a BIA decision, *Matter of Sano,* 19 I. & N. Dec. 299 (1985), which points back

to the aforementioned regulatory framework. Brief for American Immigration Council and American Immigration Lawyers Association as *Amici Curiae* 12, n.8.

Notably, this whole administrative structure appears currently to be up for review. The Administrative Appeals Office of USCIS recently issued a call for amicus briefing to further study the application of 8 C.F.R. § 103.3(a)(1)(iii)(B). *See* USCIS Admin. Appeals Office (AAO), Request for Amicus Brief (Posted April 7, 2015).[11] Specifically, the AAO seeks briefing, "in light of *Lexmark*," "on whether the beneficiaries of certain immigrant visa petitions have standing to participate in the administrative adjudication process, including standing to appeal to the AAO." *Id.*

In any event, the fact that Mantena may not have satisfied USCIS's definition of "legal standing" before the agency does not mean she does not have standing to bring this lawsuit in *federal court*. As one of our sister circuits has concluded, "the regulatory definition of 'affected party' does not preclude the beneficiary from having standing in the district court, as it relates to who has the ability to challenge the administrative denial of a petition." *Kurapati*, 775 F.3d at 1260.[12]

---

[11] This document is available at
http://www.uscis.gov/sites/default/files/USCIS/About%20Us/Directorates%20and%20Pr
ogram%20Offices/AAO/3-27-15-AAOamicus.pdf (last visited Dec. 29, 2015).
[12] The Third Circuit has also indicated its unwillingness to assume that the regulatory definition precludes standing in federal court. *Shalom*, 783 F.3d at 163 (stating that "*[e]ven assuming* that [103.3(a)(1)(iii)(B)] applies outside the context of administrative proceedings," plaintiff still had standing in an Article III court) (emphasis added). However, in *Shalom*, the Third Circuit found that the particular plaintiff fell outside the

23

We agree. What is determinative is that Mantena falls within the zone of interests protected by the statute, which conveys Congress's intent to grant individuals such as Mantena the right to sue under the statute in federal court. "The text of the INA leaves no doubt that the interests of employment-based visa petition applicants . . . are directly related to the purposes of the INA." *Shalom*, 783 F.3d at 164. "[T]he so-called 'portability provisions'—8 U.S.C. § 1154(j) and 8 U.S.C. § 1182(a)(5)(A)(iv)—likewise reflect a congressional intent to protect the interests of qualified aliens." *Patel v. U.S. Citizenship & Immigration Servs.*, 732 F.3d 633, 636 (6th Cir. 2013). It follows that to the extent that federal courts have jurisdiction to hear such arguments, qualified aliens have standing to bring these arguments to our courts.

**II**

The district court, having dismissed Mantena's statutory and regulatory claims for lack of subject matter jurisdiction, did not address the merits of her contention that she, or her current employer, should have been given notice of the government's intention to review the validity of VSG's I-140 petition. Since we have concluded, instead, that jurisdiction exists in the federal courts to hear Mantena's claims, and that she has standing in our courts to raise her claims, we must now turn to the substance of these claims. Mantena maintains that notice is needed both as a statutory and

---

purview of the regulatory exclusion, obviating the need to take a stronger stance on the exclusion's effect on standing in federal court. *Id.*

24

constitutional requirement. Because we find below that the INA, as amended by AC-21, requires some form of such notice for post-porting beneficiaries, at least as to those aliens who have notified USCIS of their change in employment, we need not and hence will not address her constitutional arguments. Since defining the exact contours of the statutory requirement would, however, benefit from further briefing and perhaps factfinding, we will remand to the district court for consideration in the "first instance" of these contours, and also to determine whether further remand to the AAO is appropriate in this regard. *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d. Cir. 2005).

**A. Notice**

The regulations governing I-140 revocation require two forms of notice before a revocation such as Mantena's can occur. They first mandate that "[r]evocation of the approval of a petition . . . be made only on notice to the petitioner or self-petitioner," who "must be given the opportunity to offer evidence in support of the petition or self-petition and in opposition to the grounds alleged for revocation of the approval." 8 C.F.R. § 205.2(b). Second, after revocation, USCIS "shall provide the petitioner . . . with a written notification of the decision that explains the specific reasons for the revocation." 8 C.F.R. § 205.2(c). When written—in a pre-"porting" world—these requirements clearly ran only to the alien's original and only employer, the filer of the petition.

In that pre-porting world, an employee would have needed a new immigrant visa petition (I-140) by a new employer for any new employment to serve as the basis for adjustment of status. The petitioner of the I-140 had to remain the alien's employer until the alien's adjustment of status application was decided and would therefore maintain a relationship with the petition beneficiary (the alien) all the way through the adjudication of the I-485. This situation left employees essentially tethered to particular jobs for the duration of USCIS processing, which were marked by long delays. But it also meant that notice to the original employer would adequately serve to inform the alien employee.

The statutory portability provisions, 8 U.S.C. § 1154(j) and 8 U.S.C. § 1182(a)(5)(A)(iv), changed all this. In a porting world, no such relationship between the alien and the original employer necessarily exists, as Mantena's case so aptly demonstrates. Mantena had not been employed with VSG for years when notice of intent to revoke was issued upon that allegedly defunct company. The question at issue is therefore how to read the notice regulations in light of the statutorily permitted—indeed encouraged—changed relationship of a post-porting employee to the original petitioner.

Congress manifestly envisioned, and hoped to promote, the development of these supplanting interests through its portability amendments to the INA. To make its intent clear, Congress explicitly titled one of the portability provisions "Job flexibility

26

for long delayed applicants for adjustment of status to permanent residence." 8 U.S.C. § 1154(j).

The job flexibility that Congress encouraged was designed to benefit not only the employee, but also employers. By virtue of the portability provisions, employers who hoped to attract foreign national employees by sponsoring them to become permanent residents based on a permanent job offer could avoid bureaucratic delay. Under the statute, as Congress recognized, such employers would be able to attract skilled workers with aspirations of permanent residency by relying on a prior employer's filings. *See* S. Rep. 106-260, 2 (2000) ("In the Information Age, when skilled workers are at a premium, America faces a serious dilemma when employers find that they cannot grow, innovate, and compete in global markets without increased access to skilled personnel."); 146 Cong. Rec. H8699-01 (daily ed. Oct. 3, 2000) (statement of Rep. Lofgren) (noting that AC-21 "does things that are important in reforming the permanent side of the immigration system which is almost broken because of bureaucratic delay" and "allows for portability of H-1B status as well as portability of I-140s and labor certifications"); Brief for American Immigration Council and American Immigration Lawyers Association as *Amici Curiae* 10.

Given portability, however, the alien employees and the successor employers who take advantage of earlier filings by other employers are frequently the *only* parties with any interests in the originally filed labor certifications and I-140 petitions. By

27

employing Mantena, CNC had, in a crucial sense, *adopted* VSG's I-140 petition.  The revocation of VSG's I-140 petition mattered little if anything to VSG, which no longer employed Mantena (and might not even remain in existence).  It may well have mattered crucially to CNC.

In such a world, who then is the proper recipient of the notice mandated by the regulations?  We believe it cannot be a party who no longer has any interest in the matter.  Because the portability provisions altered the parties who have an interest in opposing the revocation of a ported I-140 petition, we believe that the regulations must be read to require notice to the real parties in interest.  That is, the regulations, which were originally written to inform the parties in interest, only "parse" today if Mantena or CNC is entitled to notice of intent to revoke.

Relying solely on notice to VSG effectively precluded Mantena from being notified until it was too late to act, until her adjustment of status application was consequentially denied.  More broadly, limiting the notice to the original petitioner precludes the new employer, the one who has, under the portability provisions, been allowed to adopt the original I-140 petition, from asserting its interest in the matter.  And this runs directly against the aim of the statutory amendments.  By placing beneficiaries and successor employers in a position of either blind faith in the original petitioner's goodwill and due diligence or a forced and continued relationship with the now-disinterested and perhaps antagonistic original petitioner, such a scheme would

completely undermine the aims of job flexibility that those amendments sought to create. *Cf. King v. Burwell*, 135 S. Ct. 2480, 2492-93 (2015) (interpreting a statutory scheme to avoid problems that Congress designed the act to avoid); *Berman v. Neo@Ogilvy LLC*, 801 F.3d 145, 146 (2d Cir. 2015) (deferring to an SEC regulation "endeavoring to harmonize [statutory] provisions that are in tension").

The government counters that the AC-21 porting regime does not alter the notice requirements in any way. The regulations are unchanged *textually*, and the government points to the regulation defining "affected party," 8 C.F.R. § 103.3(a)(1)(iii)(B), which expressly excludes a beneficiary as an affected party. But the government makes no argument as to why the notice regulation and the "affected party" regulations should be read in conjunction. In other words, the fact that the alien employee is not an "affected party" under that regulation does not necessarily mean that the alien employee is not a beneficiary of the notice requirements. Much more important, the government's argument does not consider the possibility that the new employer, after the adoption of the statutory portability provisions of AC-21, must, *contextually*, be treated as the "affected party" at least for purposes of notice.

The "affected party" regulation is a remnant of the pre-porting regime, and, we believe, it must be read as such. The regulation, promulgated ten years prior to AC-21, noted that "a visa petition proceeding has long been a proceeding between the petitioner and the service." Appeals, Precedents, Certifications and Motions, 55 Fed.

29

Reg. 20,767, 20,768 (May 21, 1990). AC-21, however, allows beneficiaries to sever ties from the original petitioner and move to new employment, with their new employers relying on the original petitioner's I-140. Mantena and her new employer were permitted to and in fact relied on the I-140 petition of Mantena's former employer, who no longer had ties to Mantena. Because Mantena's new employer was permitted to adopt the I-140 petition made by her prior employer, it only makes sense that the subsequent employer be treated as the *de facto* petitioner and thus entitled to adequate notice in cases of visa petition revocations. This should especially be the case here, where Mantena and her successor employer wrote to USCIS explicitly seeking to substitute the new employer for VSG.[13]

We need not, however, go so far today. We only hold here that USCIS acted inconsistently with the statutory portability provisions of AC-21 by providing notice of

---

[13] Other courts, and USCIS itself, have recognized the irrationality of universally ignoring the beneficiary's interest. In *Ilyabaev v. Kane*, 847 F. Supp. 2d 1168 (D. Ariz. 2012), a district court grounded its decision requiring pre-revocation notice requirements for the adjustment of status application in a regulation governing the I-485 denial, 8 C.F.R. § 103.2(b)(16)(i) (requiring an opportunity to rebut derogatory information). The court concluded that there "was a direct cause and effect between CIS's reliance on the information it received [, upon which it revoked the I-140 petition,] and the denial of his I-485 Application," *id*. at 1177-78, and that the beneficiary of an I-140 petition who is simultaneously an I-485 applicant is therefore entitled to notice and opportunity to respond. *But see Musunuru*, 81 F. Supp. 3d at 727-28 (finding that an employee beneficiary, even a post-porting employee, is not entitled to pre-revocation notice). And, in light of the statutorily created beneficiary interests, USCIS has announced its intention to amend its regulations to account for AC-21 in the Unified Agenda of Regulatory and Deregulatory Actions. *See* Dep't of Homeland Security, *Implementation of AC21, the VWPPA, and the ACWIA* (Spring 2015); Dep't of Homeland Security, *Employment-Based Immigration Modernization* (Spring 2015).

30

an intent to revoke neither i) to an alien beneficiary who has availed herself of the portability provisions to move to a successor employer nor ii) to the successor employer, who is not the original I-140 petitioner, but who, as contemplated by AC-21, has in effect adopted the original I-140 petition. And, in so holding, we recognize that, in some contexts, these beneficiary and successor employer entities may be one and the same, since USCIS permits beneficiaries to port to self-employment.

We leave open, for the moment, the precise way to read the notice regulations in the light of AC-21. That is, the question of who is entitled to notice, whether the beneficiary or the successor employer, we leave to the district court to decide in the first instance.[14] On remand to the district court, we encourage supplemental briefing regarding the precise statutory origins and requirements of the regulations establishing the NOIR in I-140 revocation proceedings, particularly with regard to both the Administrative Procedure Act and INA. Such a more thorough briefing can shed further light on how to read the regulation so that it best comports with the notice requirements implicit in, but nonetheless mandated by, AC-21.

---

[14] It might appear that given the successor employer's adoption of the original I-140 petition, it is notice to the successor employer that is required. However, in the absence of post-porting regulations requiring information about the new employer to be provided to USCIS, we cannot decide that it is necessarily the successor employer who is entitled to notice. For this reason we remand to the district court for further consideration.

In doing this, the district court may consider remanding to the AAO for it to address the question in the light of its particular expertise in the matter. *See Lugo v. Holder*, 783 F.3d 119, 121 (2d Cir. 2015) (remanding to the BIA where the court "would benefit from the [administrative body's] precedential opinion" and expertise); *Ay v. Holder*, 743 F.3d 317, 320 (2d Cir. 2014) (*per curiam*) (remanding to the BIA to address statutory question in light of the administrative body's expertise).

**B. Constitutional Claim**

Because we believe that the post-porting statutory scheme requires notice of the revocation to parties beyond the original petitioner, we need not consider whether, despite the doubts cast by many courts on the liberty and property interests implicated in an immigrant visa, a lack of notice would violate the constitutional procedural due process requirements. Our reading of the effect of the portability provisions allows us to avoid addressing this potentially problematic constitutional question.

**CONCLUSION**

Mantena's immigration ordeal highlights the barriers that, fifteen years after the passage of legislation, still impede Congress's intent to provide flexibility to non-citizen workers seeking immigrant status and to those employers seeking to hire such skilled workers. For the reasons set forth above, we **VACATE the judgment of the district**

32

**court** and **REMAND the case** to that court for further proceedings consistent with this opinion. This panel retains jurisdiction of the case for purposes of any future appeals.