DEBRA FREEMAN, United States Magistrate Judge
In this action, which is before this Court on consent pursuant to 28 U.S.C. 636(c), plaintiffs Next Generation Technology, Inc. ("NGT") and Puspita Deo ("Deo") (collectively, "Plaintiffs") challenge, under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq. , the final decisions of the United States Citizenship and Immigration Services ("USCIS"), revoking its approval of an H-1B visa petition filed by NGT on behalf of Deo and denying NGT's subsequently amended petition. Plaintiffs now move for summary judgment in their favor, claiming that the decisions of USCIS, made under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, 1184, were arbitrary and capricious. Defendants Jeh Johnson, Loretta E. Lynch, and Alejandro Mayorkas (collectively, "Defendants" or the "Government"),[1] cross-move for summary judgment *257 dismissing this action, arguing that the administrative decisions at issue are entitled to deference. For the reasons set forth below, the parties' respective motions (Dkts. 26, 27) are each granted in part and denied in part, and this case is remanded to the agency for further proceedings consistent with this Memorandum and Order.
BACKGROUND
A. The H-1B Visa
The INA allows U.S. employers to petition for H-1B nonimmigrant visas on behalf of alien beneficiaries. 8 U.S.C. § 1184(c)(1). As framed by the statute, this type of visa enables beneficiaries to be admitted temporarily to the United States, in order to work in "specialty occupation[s]" that require both "theoretical and practical application of a body of specialized knowledge and attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(h)(3). Pursuant to the regulations implementing the INA, a position must at least be found to meet one of the following four criteria, for it to be considered a "specialty occupation" under the statute:
(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
(3) The employer normally requires a degree or its equivalent for the position; or
(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.
8 C.F.R. § 214.2(h)(4)(iii)(A) ; see also V-B, Inc., 2017 WL 959834 at *3 (D.H.S., U.S.C.I.S. 2017) ("[T]he criteria stated in 8 C.F.R. § 214.2(h)(4)(iii)(A) should logically be read as being necessary, but not necessarily sufficient, to meet the statutory and regulatory definition of specialty occupation.") (citing Defensor v. Meissner , 201 F.3d 384, 386-87 (5th Cir. 2000) ).
In addition, the regulations dictate that the beneficiary must possess at least one of the following four qualifications:
(1) Hold a United States baccalaureate or higher degree required by the specialty occupation from an accredited college or university;
(2) Hold a foreign degree determined to be equivalent to a United States baccalaureate or higher degree required by the specialty occupation from an accredited college or university;
(3) Hold an unrestricted State license, registration or certification which authorizes him or her to fully practice the specialty occupation and be immediately engaged in that specialty in the state of intended employment; or
(4) Have education, specialized training, and/or progressively responsible experience that is equivalent to completion of a United States baccalaureate or higher degree in the specialty occupation, and have recognition of expertise in the specialty through progressively responsible *258 positions directly related to the specialty.
8 C.F.R. § 2.14.2(h)(4)(iii)(C)(1)(4).[2]
B. NGT's Petitions [3]
NGT is "an information technology firm specialized in providing IT services, custom software solutions and development for its clients." (R. at US144.) On April 1, 2009, NGT petitioned USCIS for an H-1B visa on Deo's behalf for her employment as a "programmer." (Id. at US493 ("Initial Petition," referenced in the Record by petition receipt number WAC0914850406).) This Initial Petition stated that the term of Deo's intended employment would be three years, from October 1, 2009 to September 30, 2012, the maximum amount of time permitted by the regulations.[4] (Id. ) It also stated that Deo had a Ph.D. in Computer Science from Dublin City University, in Ireland. (Id. at US510.)
On June 9, 2009, USCIS issued a Request for Evidence ("RFE") with respect to NGT's Initial Petition, seeking additional information. (Id. at US525-28.) As it appeared that NGT was "engaged in the business of consulting, employment staffing, or job placement," USCIS stated that it required clarification of NGT's "employer-employee relationship with the beneficiary," as well as evidence from the "end-client" sufficient to establish that "a specialty occupation exist[ed] for the beneficiary." (Id. at US527.)
In return, NGT submitted a letter dated July 18, 2009, clarifying that the beneficiary would be "developing SAP solutions package for Packaging Industries" and that this work was being done "in conjunction" with NGT's client/partner, SAP America, Inc. ("SAP"), rather than for a client. (Id. at US529.) NGT further clarified that the work was being completed "in-house" and not at "the client location," and provided the name and contact information for the internal project manager overseeing the work. (Id. at US529-31.)
On July 27, 2009, USCIS approved NGT's Initial Petition. (Id. at US491.) On November 22, 2009, however, Deo entered the United States as a B-2 visitor, instead of proceeding to apply for her H-1B visa at the U.S. Consulate in Amsterdam, as originally planned.[5] (Id. at US14, US728.) On March 1, 2010, NGT submitted an amended petition to USCIS for an H1-B visa on Deo's behalf (id. at US1098-127 ("Amended *259 Petition," referenced in the Record by petition receipt number WAC1010250458) ), and, on or about June 9, 2010, NGT submitted a second amended petition (id. at US697-706 ("Second Amended Petition," referenced in the Record by petition receipt number WAC1020250476) ).
On August 2, 2010, USCIS issued an RFE with respect to the Second Amended Petition, requesting the following: (1) an itinerary of employment for the beneficiary,[6] (2) information sufficient to establish, by a preponderance of evidence, that NGT had a valid employer-employee relationship with Deo, such that it possessed the right to control and direct her work; and (3) evidence demonstrating that NGT had sufficient specialty occupation work immediately available for the beneficiary. (Id. at US787-92.) Each request was accompanied by a non-exhaustive list of sample evidence that could address the request. (Id. ) The second and third requests specifically listed, as the type of evidence that could constitute an appropriate response: "Copy of signed Employment Agreement between [NGT] and the beneficiary detailing the terms and conditions of employment." (Id. )
On September 10, 2010, NGT responded to the RFE with additional evidence, including an itinerary and signed employment agreement between NGT and Deo, dated May 21, 2010. (Id. at US800-05, US819.) The itinerary listed Deo's title as "Research Engineer (Programmer)" and stated that she would "develop computational models to optimize the extraction process ... of active bio-molecules from their natural resources." (Id. at US801, US806.) The itinerary listed Deo's dates of employment as May 24, 2010 to September 28, 2012. (Id. ) In reference to Deo's duties while employed by NGT, the employment agreement stated: "Employee shall report to such offices or locations as assigned by Employer, and shall be available to work as needed and directed by the management of NGT or the management of the Client location where she is reporting...." (Id. at US813.) Also in response to the RFE, NGT stated that "the minimum requirement for entry into the position [of programmer] is attainment of a Bachelor's degree in Engineering or Technology (or its equivalent), plus 1-2 years of experience." (Id. at US801.)
On September 26, 2010, having found NGT's evidence to be insufficient, USCIS issued a Notice of Intent to Revoke ("NOIR") its approval of the Initial Petition. (Id. at US238.) USCIS found that "the statement of facts contained in the [Second Amended Petition] was not true and correct," because (1) "it [did] not appear that the petitioner [was] the entity that [would] be providing such [specialty occupation] duties to the beneficiary," and (2) "a query of public record information discovered that on March 18, 2010, [NGT] had filed for Chapter 11 Bankruptcy," thus calling into question NGT's ability to pay Deo the required wage. (Id. at US240-42.) On this second point, USCIS noted that NGT had previously provided USCIS with its 2008 U.S. Corporate Tax Return showing that its gross sales were $5.2 million, and it had not notified the agency of its subsequent bankruptcy. (Id. ) USCIS asserted in the NOIR that, for these reasons, NGT had violated H-1B requirements, and further noted that:
[without] valid contracts between the petitioner and the actual end-client firm ultimately involved with the beneficiary's computer related duties, the evidence *260 does not establish the work to be completed; that the duties to be performed are those of a computer programmer position, and, thus, a specialty occupation position; and that the work will be available for the beneficiary when he [sic] enters the United States.
(Id. at US243-44.) The NOIR afforded NGT 30 days to submit further evidence in response. (Id. at US238.)
NGT responded to the NOIR by a letter from its counsel, dated October 18, 2010 (id. at US256),[7] explaining that, although "the term 'consultant' " had been used in reference to Deo and NGT "does supply expertise to third parties, the employment relationship [in question] remains completely and solely between [NGT] and [Deo]" (id. ; see also id. at US260). NGT's counsel reiterated that NGT was "not providing the beneficiary as a consultant to SAP America, Inc. " (Id. at US257 (emphasis in original).) The letter further noted that, due to delays caused by the beneficiary and time spent awaiting adjudication of its H-1B petition, the initial project that NGT had intended for Deo, entitled "Professional Industry Knowledge for Packaging Application Consulting" (the "PIK PAC"), had been largely completed. (Id. at US259-60, US536.) Thus, the letter stated that NGT intended to employ Deo mainly as a "high skilled programmer ... to develop [a] computational model for the prediction of the extractability of active bio-molecules from their natural resources for Next Generation Technology SCRD (Specialty Chemicals Research and Development)" ("NGT/SCRD"). (Id. at US334.) The letter further indicated that NGT also anticipated needing Deo's help implementing the already-developed SAP PIK PAC and modifying "the solution as per the customers' need." (Id. ) NGT's counsel noted that the SAP PIK PAC project had arisen from a partnership agreement between NGT and SAP America, and explained that "the two corporations [were] in a partnership arrangement to create a new software package to be marketed to a particular industry." (Id. at US257 (emphasis omitted).) NGT also submitted a letter from its bankruptcy attorney, dated October 20, 2010, indicating that the company intended to reorganize, rather than liquidate, through Chapter 11 bankruptcy, and that it was "continuing to operate fully ... under the supervision of the SDNY Bankruptcy Court and the United States Trustee."[8] (Id. at US311-14.)
On November 30, 2010, USCIS issued a Notice of Revocation ("NOR") of its approval of NGT's Initial Petition. (See id. at US232-37.) In reviewing the evidence submitted by NGT in response to the August 2010 RFE and the September 2010 NOIR, USCIS found that NGT had failed to demonstrate that there would be specialty occupation work available for Deo. (Id. at US234.) USCIS noted that NGT's partnership agreement with SAP America (see id. at US266-310) was signed and commenced after Deo's proposed employment start date (id. at US235). USCIS explained that "the fact that [NGT] may at some time in the future be fully qualified [to provide specialty occupation work] [did] not exempt [NGT] from being eligible at the time of the filing." (Id. at US236.) Given *261 that NGT had stated that SAP America was its partner and not its end client, and on the apparent assumption that not all of Deo's work was intended to be performed for the partnership, USCIS also found that there was insufficient evidence from the actual end client concerning Deo's proposed duties. (Id. at US235.) On this point, USCIS wrote that, as "the very nature of [NGT's] consulting business indicated that[,] eventually, [Deo] would be outsourced to client sites to implement specific projects and/or assist clients with other technical issues," the evidence provided that pertained to only one project could not "be deemed representative of [Deo's] entire schedule while in the United States." (Id. at US237.) Regarding NGT's Chapter 11 Bankruptcy, USCIS explained that, while the letter from bankruptcy counsel and Notice of Chapter 11 Bankruptcy produced by NGT noted NGT's "attempts to enter new contracts" and its commitment of "over $400,000 in marketing funds for the year 2009 in order to grow its SAP practice," those submissions "fail[ed] to address the actual in-house project" at issue. (Id. at US236.) Further, USCIS stated that NGT had provided no documentation or evidence from the Bankruptcy Court regarding NGT's ability to reorganize or liquidate pursuant to a plan; rather, NGT had provided "[m]ere assertions of counsel," which were not evidence. (Id. ) Based on this reasoning, USCIS revoked its approval of NCT's Initial Petition and denied its Second Amended Petition. (Id. at US237, US697.)
On December 16, 2010, NGT filed an appeal to the Administrative Appeals Office ("AAO"), challenging the revocation by USCIS of its approval of the Initial Petition. (See id. at US116.) By cover letter, NGT also asked for an additional 30 days to submit a supporting brief, and requested that, upon receipt of the brief, the agency consider the submission "as a Motion to Reopen/Reconsider before forwarding to the AAO for adjudication." (Id. at US117.) On January 11, 2011, NGT submitted a brief and additional evidence in support of its appeal. (See id. at US125.) The brief clarified that, contrary to USCIS's findings, NGT's role in developing the SAP PIK PAC solution for its partner SAP was NGT's "contribution" to the entities' partnership rather than a "contradict[ion] of the partnership arrangement." (Id. at US127.) NGT also noted that USCIS had chosen to ignore evidence of NGT's prior agreements with SAP that were entered into prior to the petition filing date, and to focus exclusively on the fact that the formal agreement between NGT and SAP, which was produced to the Government as evidence that Deo was not being employed as a consultant, was entered into after the filing date of the petition. (Id. at US128.)
In addition, NGT argued that, to the extent USCIS' decision was based on NGT's Chapter 11 filing, the decision was erroneous because it presumed, without justification, that NGT would not be able to continue to function during and after bankruptcy. (Id. at US129.) As evidence of its ability to employ Deo and to pay her the wage described in its petitions, NGT produced a letter from an "angel investor" committing to invest $200,000 in NGT, and an investment agreement by which Donald J Dymond committed to invest $90,000 in NGT. (Id. at US80-81.) These documents showed that the funds from both investors were specifically allocated for implementation of the SAP PIK PAC project. (Id. ) NGT also submitted an industry/peer review of the anticipated SAP PIK PAC solution from Jim Shaw ("Shaw"), an industry peer with "almost 35 years of professional management experience." (Id. at US169.) Shaw's letter stated that, after carefully reviewing and vetting NGT's project with his "industry colleagues," he had concluded that the SAP PIK PAC was an *262 "exciting software solution that will receive strong support within the packaging industry." (Id. at US169-70.) In a subsequent letter dated September 5, 2012, in which NGT asked the AAO to expedite its decision, NGT further informed the AAO that NGT had recently received a $200,000 National Science Foundation grant for Deo's second planned project, by which she would develop a computational model for the prediction of the extractability of active bio-molecules from their natural resources. (Id. at US175-76.)
On November 3, 2012, the AAO dismissed NGT's appeal. (Id. at US29-38.) The AAO found that NGT had failed to prove that the proposed position qualified as a "specialty occupation" and that NGT had paid Deo the required wage, and had failed to establish that a "credible offer of H-1B caliber employment existed at the time of filing and for the duration of the beneficiary's requested stay." (Id. at US32, US37.) The notice of the dismissal of the appeal informed NGT that it could file a motion to reconsider or a motion to reopen, if it "believe[d] [that] the AAO inappropriately applied the law in reaching its decision," or if NGT had "additional information" that it wished to have considered. (Id. at US29.) On November 25, 2012, NGT filed a motion to reconsider the AAO's decision denying its appeal of USCIS's revocation of approval of the Initial Petition. (Id. at US55.) In that motion, NGT argued that it had been "presented, time after time, with arguments that appear[ed] after [NGT] [had] adequately responded to requests for evidence." (Id. ) NGT complained that "[t]his situation of 'moving targets' [made] it extremely difficult for [NGT] to meaningfully present evidence and respond to [USCIS] and AAO concerns." (Id. ) In its motion, NGT stressed that it had ample in-house opportunities for the beneficiary with no end-client involvement, further described the complexities of Deo's proposed roles and responsibilities, argued that a bachelor's degree was, "in fact, the normal requirement in the industry [for Deo's position] according to all sources," and noted that, because "the beneficiary was not ever able to work for the petitioner" due to the revocation of Initial Petition, "failure to pay [Deo] was never a possibility." (Id. at US60-1, US67, US74.)
On July 2, 2014, USCIS sent NGT a Notice of Derogatory Information ("NDI"), which gave NGT an opportunity to respond to potential bases for the agency's adverse decision of which NGT was previously unaware. (Id. at US23-27.) NGT responded to the NDI on July 31, 2014. (Id. at US11-22.)
On October 16, 2014, the AAO issued a final denial of NGT's appeal. (Id. at US3-10.) As a preliminary matter, the AAO found that NGT had "sufficiently addressed the issues raised" in the NDI, such that those issues need "not be discussed further." (Id. at US4 n. 1.) The AAO also concluded that "[i]n light of the evidence of record," the AAO was "persuaded by counsel that the SAP/Petitioner agreements [did] not establish that the beneficiary would be working as an employee of SAP." (Id. at US9.) Nonetheless, the AAO found that the revocation of approval for the Initial Petition and denial of the Second Amended Petition were proper. (Id. at US3-10.) It stated that NGT had failed to make the following showings: (1) that H-1B caliber work existed for Deo at the time of filing or that a work itinerary existed for her; (2) that Deo would be employed as a programmer for the duration of her employment; (3) that the proposed position qualified as a specialty occupation; and (4) that NGT did, in fact, pay Deo the required wage in compliance with its obligations. (Id. at US3-10.)
*263 C. Procedural History
Plaintiffs filed a Complaint in this Court on July 20, 2015, seeking a declaratory judgment that "NGT is a qualified U.S. employer engaged in an employer-employee relationship with [Deo]," that Deo's "position qualifies as a specialty occupation, and that "[e]mployment in her specialty occupation is available" (see Complaint, dated July 20, 2015 ("Compl.") (Dkt. 1) ¶¶ 51-53), and also seeking an Order requiring Defendants to grant Plaintiffs' "motion to reconsider [USCIS's revocation of its approval of the Initial Petition] and [to] reinstate [Deo] in H1-B status," and granting such other further equitable relief as the Court "deems just and proper" (id. , at 18.) Defendants filed an Answer on January 20, 2016. (See Answer, dated Jan. 20, 2016 ("Ans.") (Dkt. 17).)
On November 7, 2016, Plaintiffs filed their summary judgment motion (see Pl. Mem., and exhibits thereto (Dkt. 26) ), asking that the Court enter judgment ordering Defendants "to grant the motion to reconsider and reinstate [Deo] in H1-B status" (id. , at 21), nunc pro tunc to the date of USCIS's revocation of NGT's Initial Petition (see id. ¶ 43). The Government filed its opposition and cross-motion for summary judgment on December 12, 2016, arguing that USCIS's decisions were not arbitrary or capricious and must therefore be affirmed. (See Notice of Motion, dated Dec. 12, 2016 (Dkt. 27); Nuez Decl. (Dkt. 28); Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment, dated Dec. 12, 2016 ("Def. Mem.") (Dkt. 29).) Plaintiffs filed a reply memorandum of law in further support of their motion and in opposition to Defendants' cross motion on January 9, 2017. (Plaintiffs' Reply to Defendants' Opposition and Defendants' Cross Motion to Dismiss" ("Pl. Reply Mem.") (Dkt. 30).) The Government filed a reply memorandum in further support of its cross-motion on February 6, 2017. (Dkt. 31.)
At the outset, this Court notes that it cannot "reinstate" Deo's "H1-B status" as requested by Plaintiffs, because Deo was never an H1-B visa holder. (See supra , at n.5.)[9] As the challenged agency actions are USCIS's decisions to revoke approval of NGT's Initial Petition and to deny NGT's Second Amended Petition, the Court will focus its attention on the question of whether those decisions should be set aside.
DISCUSSION
I. PLAINTIFFS' STANDING
A federal court must satisfy itself that it has subject matter jurisdiction over a case before it may act. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc. , 109 F.3d 105, 107 (2d Cir. 1997) ("[T]he failure of the parties to contest the district court's authority to hear a case does not act to confer federal jurisdiction since a challenge to subject matter jurisdiction cannot be waived and may be raised either by motion or sua sponte at any time." (citations omitted) ). Here, although Defendants do not raise a jurisdictional defense in their motion papers, they did assert in their Answer that Deo lacks standing to *264 bring this action. (Ans., at 8.) Standing is "[a]n important component of the Article III jurisdictional limit of federal courts to deciding 'cases' or 'controversies.' " All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co. , 436 F.3d 82, 85 (2d Cir. 2006) ; see also U.S. Const. art. III.
The Second Circuit has found that beneficiaries of immigrant visa petitions have Article III standing to challenge the denial of such petitions in federal court. See Mantena v. Johnson , 809 F.3d 721, 730, 736 (2d Cir. 2015) (declining to reach question of whether alien has constitutional right to procedural due process, but nonetheless holding that alien beneficiary of former employer's immigration petition "has Article III and prudential, as well as statutory, standing to raise her claims in the federal courts"). While this Circuit has not yet addressed whether the beneficiaries of non immigrant visa petitions similarly have standing to seek judicial relief when faced with petition denials by USCIS, courts in other jurisdictions have expanded upon the reasoning in Mantena to find that such plaintiffs do have standing to sue. See, e.g. , Tenrec, Inc. v. United States Citizenship & Immigrations Servs. , 2016 WL 5346095, at *6-8 (D. Or. Sept. 22, 2016).
Further, this Court notes that courts in this district have permitted employer-petitioners of visa applications, made on behalf of alien employee beneficiaries, to challenge final determinations of USCIS. See , e.g. , Just Bagels Mfg., Inc. v. Mayorkas , No. 12 cv 1358 (JLC), 900 F.Supp.2d 363, 376 (S.D.N.Y. 2012) ; Glara Fashion, Inc. v. Holder , No. 11 cv 889 (PAE), 2012 WL 352309, at *6 (S.D.N.Y. Feb. 3, 2012). As it appears that plaintiff NGT has standing "to assert these rights as [its] own," the Court need not reach the issue of Deo's standing in order to decide the pending motions. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp. , 429 U.S. 252, 264, n. 9, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) ("Because of the presence of ... at least one individual plaintiff who has demonstrated standing to assert these rights as his own ... we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit."); see also Horne v. Flores , 557 U.S. 433, 446, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009) (citing Vill. of Arlington Heights for the proposition that the Court need not reach the issue of standing for one petitioner when the other petitioner "clearly has standing to challenge the lower courts' decisions").
II. LEGAL STANDARDS APPLICABLE TO THE PARTIES' MOTIONS
Pursuant to the APA, federal courts have jurisdiction to review "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. In reviewing agency determinations, courts employ a deferential standard, "under which such actions may only be disturbed if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or are unsupported by substantial evidence." Glara , 2012 WL 352309 at *6 (citing 5 U.S.C. § 706(2)(A), (E) (citation omitted) ). A court will not disturb an agency finding that is "supported by reasonable, substantial, and probative evidence in the record when considered as a whole." Id. (citing Wu Biao Chen v. INS, 344 F.3d 272, 275 (2d Cir. 2003) ). The Court should neither "engage in an independent evaluation of the cold record, nor substitute its judgment for that of the agency." Just Bagels , 900 F.Supp.2d at 373 (S.D.N.Y. 2012) (citations omitted.)
Still, "[w]hile judicial review of agency decisions is highly deferential, it is not without teeth."
*265 Raj & Co. v. U.S. Citizenship & Immigration Servs. , 85 F.Supp.3d 1241, 1248 (W.D. Wash. 2015). An agency determination should be found to be arbitrary and capricious where "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Nat. Res. Def. Council v. U.S. E.P.A. , 658 F.3d 200, 215 (2d Cir. 2011) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co. , 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).)
The question of "whether an agency's decision is arbitrary and capricious is a legal issue amenable to summary disposition." Glara , 2012 WL 352309 at *5 (citation omitted); see also id. ("Where, as here, a party seeks review of agency action under the APA and the entire case on review is a question of law, summary judgment will generally be appropriate." (citing Citizens Against Casino Gambling in Erie Cty. v. Hogen , 2008 WL 2746566, at *25 (W.D.N.Y. July 8, 2008) ) ). Under the Federal Rules of Civil Procedure, summary judgment may be granted where there "is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
An agency determination may be remanded to the defendant agency for additional fact-finding, "when the record does not support the agency action, when the agency has not considered all relevant factors, or when the reviewing court simply cannot evaluate the challenged action on the basis of the record before it." Nat'l Audubon Soc. v. Hoffman , 132 F.3d 7, 14 (2d Cir. 1997).
III. THE AGENCY EITHER DISREGARDED EVIDENCE OR FAILED TO EXPLAIN ITS REASONS FOR REJECTING EVIDENCE IN THE RECORD THAT COULD HAVE MET THE STATUTORY REQUIREMENTS FOR AN H1-B VISA.
A. Evidence That the Proposed Position for Deo Was a "Specialty Occupation"
The law provides that H-1B visas are only available for work in "specialty occupations." See 8 U.S.C. § 1184(h)(3). As set out above (see Background, supra , at Section A), for a position to qualify as a specialty occupation under the INA, that position must require both: (1) "theoretical and practical application of a body of specialized knowledge," and (2) "attainment of a bachelor's or higher degree in the specific specialty," 8 U.S.C. § 1184(h)(3) ; see also US247 (USCIS stating, in its NOIR, that the "critical element [in determining whether a position is a specialty occupation] is not the title of the position or an employer's self-imposed standards but whether the position actually requires the theoretical and practical application of a body of highly specialized knowledge, and the attainment of a baccalaureate or higher degree in the specific specialty as the minimum for entry into the occupation, as required by the Act").
Here, NGT submitted evidence to USCIS that could have been found sufficient to meet each of these two requirements.
1. The Position Requirement of "Theoretical and Practical Application of a Body of Specialized Knowledge"
In support of its compliance with the first statutory requirement, NGT provided the following description for the position that Deo would hold for one of her two listed projects:
Dr. Puspita Deo will develop computational model for the prediction of the *266 extractability of active bio-molecules from their natural resources .... To perform the computational modeling work the beneficiary needs to have hands on experience in simulation, modeling and optimization using Matlab and C++ .... The beneficiary will utilize her expertise in Technology to perform the following professional duties:
• Analysis, research, design, write specification, and develop software code consistent with our needs
• Design new application and develop application prototypes
• Promote efficient user utilization of the system
• Co-operate with and provide technical support to project teams and members and associate
• Develop and maintain proficiency in utilizing technical and analytical tools to give optimum results to the management and business
• Analysis, conversion coding, code walkthrough, unit and integration testing
(R. at US801.)
The Government contends that the bulleted duties "were only generic job descriptions containing no specific information about the actual work Deo would be doing," and argues that it was appropriate for USCIS to discount NGT's more specific description of Deo's development of a computational model because the documents did not establish that Deo would be working on this project at the time of filing. (Def. Mem., at 16; R. at US219.) USCIS, however, failed to give adequate reasons as to why the position description for the PIK PAC project, which was established at the time of filing, did not require "theoretical and practical application of a body of highly specialized knowledge."
In response to USCIS' RFE of June 9, 2009, NGT submitted an executed assignment agreement between NGT and SAP America that was effective as of January 1, 2009. (R. at US533-35.) That agreement gave NGT the right to develop the PIK PAC for SAP America. (Id. at US529.) NGT also attached a project description that described the "roles and responsibilities" for each position needed for the project. (Id. at 559.) The responsibilities for Deo's role-that of "Sr. Programmer/Programmer"-included: "Technical program coding; Developing the functional program; Algorithm development; and Debugging the existing programs." (Id. at US560.) The project description also included details about the overall project, stating that NGT would be developing "enterprise resource planning software ... customized ... to ... business processes [that] are prevalent and common in the Paper packaging [industry]." (Id. at US539.)
Although USCIS stated that "[e]ach position must be evaluated based upon the nature and complexity of the actual job duties to be performed with that specific employer," it never articulated why the enumerated PIK PAC duties for a specific employer (NGT) were incompatible with a specialty occupation. (Id. at US247.) As a result, the Court cannot find that, with respect to determining whether the proposed position involved the "theoretical and practical application of a body of specialized knowledge," 8 U.S.C. § 1184(h)(3), USCIS "considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action." Noroozi v. Napolitano , 905 F.Supp.2d 535, 541 (S.D.N.Y. 2012) (citing J. Andrew Lange, Inc. v. FAA, 208 F.3d 389, 391 (2d Cir. 2000) ).
2. The Position Requirement of "Attainment of a Bachelor's or Higher Degree in the Specific Specialty"
In support of their arguments as to whether the Record does or does not *267 show that NGT's proposed position for Deo would meet the second statutory requirement - that a person holding the position have a bachelor's or higher degree in the specific specialty, both parties appropriately cite to the United States Department of Labor, Bureau of Labor Statistics, Occupational Outlook Handbook (2012) (the "Occupational Handbook"). (See Def. Mem., at 14; Pl. Reply. Mem., at 11.) "Reliance on the Occupational Handbook is reasonable in determining whether a proposed position satisfies the requirements of a 'specialty occupation.' " Blacher v. Ridge , No. 4 cv 8004 (LAP), 436 F.Supp.2d 602, 609 (S.D.N.Y. 2006).
Two portions of the Occupational Handbook are relevant here. First, as to whether a bachelor's degree or higher is required for a programmer position, that publication states: "Most computer programmers have a bachelor's degree; however, some employers hire workers with an associate's degree." (R. at US100; see also Occupational Handbook ("Computer Programmers/How to Become a Computer Programmer/Education").) Somehow, based on this and on a document that NGT submitted to USCIS that indicated 11 percent of computer programmer positions required some college or no degree and six percent required only a high school diploma (R. at US107), the Government argues that "the record demonstrates that USCIS properly determined that computer programmers are not normally required to have a bachelor's degree" (Def. Mem., at 14); see also 8 C.F.R. § 214.2(h)(4)(iii)(A)(1) (indicating that one potential criterion for demonstrating that a position constitutes a "specialty occupation" is where "[a] baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position"). Even affording appropriate deference to the Government's interpretation of the statutory and regulatory requirements, this Court is at a loss to see a "rational connection" between the evidence indicating that "most computer programmers have a bachelor's degree" and USCIS's determination that "computer programmers are not normally required to have a bachelor's degree." See Berrios v. Holder , 502 Fed.Appx. 100, 101 (2d Cir. 2012).
Further, Plaintiff draws the Court's attention to an internal USCIS memorandum, stating that USCIS will
generally consider the position of programmer to qualify as a specialty occupation. This will especially be true if the position involves providing clients with programming analysis, custom designs, modification, and/or problem solving software. Positions such as these are usually associated with consulting firms.
(Pl. Reply Mem., Tab B.) In this instance, where the Record demonstrates that NGT is a consulting firm and that Deo would be working on software for clients (see R. at US123)-two factors listed by the agency itself as weighing in favor of its already "general" view that a programmer position qualifies as a specialty occupation-USCIS's determination to the contrary about the position at issue in this case would appear to lack "reasonable, substantial, and probative evidence in the record." See Glara , 2012 WL 352309 at *6.
The second relevant portion of the Occupational Handbook relates to whether to whether a bachelor's degree or higher in the specific specialty is required for a programmer job. On this point, the AAO found that the Occupational Handbook "does not state [that] a U.S. bachelor's or higher degree in a specific specialty or its equivalent ... [is] a normal minimum requirement ... for entry into the occupation of computer programmer." (R. at US37.) This, however, does not represent a fair reading of the Occupational Handbook. While noting that "some employers hire *268 workers with an associate's degree" for computer programmer positions, the Occupational Handbook goes on to state that "[m]ost computer programmers have a bachelor's degree in computer science or a related subject." Occupational Handbook ("Computer Programmers/How to Become a Computer Programmer"). Thus, if the proposed position qualifies as a computer programmer position, then the Occupational Handbook arguably demonstrates that a bachelor's degree or higher in a specific specialty is "normal[ly]" the minimum requirement for entry into the position. See 8 C.F.R. § 214.2(h)(4)(iii)(A)(1).
In sum, the Court finds that USCIS disregarded "pertinent evidence" in the Record and failed to "articulate[ ] a satisfactory explanation for its action" in declining to find that the programmer position being offered for Deo by NGT was a "specialty occupation," within the meaning of the INA and applicable regulations, and that USCIS's decision in this regard was therefore arbitrary and capricious. Noroozi , 905 F.Supp.2d at 541.
B. Evidence That NGT and Deo Would Be in a Valid Employer-Employee Relationship
Only a "United States employer" that has "an employer-employee relationship [with the beneficiary], as indicated by the fact that it may hire, pay, fire, supervise, or otherwise control the work of [the beneficiary]," can file an H-1B petition on the beneficiary's behalf. 8 C.F.R. 214.2(h)(2)(i)(A) ; 8 C.F.R. 214.2(h)(4)(ii)(2). Based on common-law principles, as articulated in Nationwide Mutual Ins. Co. v. Darden , 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), and Clackamas Gastroenterology Assoc. v. Wells , 538 U.S. 440, 123 S.Ct. 1673, 155 L.Ed.2d 615 (2003), USCIS has derived 11 factors (the "Neufeld Factors") for consideration in determining whether a valid employer-employee relationship exists. (See Memorandum from Donald Neufeld, Associate Director, Serv. Ctr. Operations, USCIS to Serv. Ctr. Dirs., (Jan. 8, 2010) ) (the "Neufeld Memorandum"); see also Broadgate Inc. v. U.S. Citizenship & Immigration Servs. , 730 F.Supp.2d 240, 246 (D.D.C. 2010) (dismissing with prejudice an action to invalidate the Neufeld Memorandum and concluding that "the Memorandum establishes interpretive guidelines for the implementation of Regulation [ 8 C.F.R. § 214.2(h)(4)(ii) ], and ... does not amend the Regulation by repudiating or being irreconcilable with it"). The factors are used to establish whether, based on the totality of the circumstances, the employer has submitted evidence sufficient to establish that it has the right to control the beneficiary's work. ( Id. )
The Neufeld Factors are as follows:
(1) Does the petitioner supervise the beneficiary and is such supervision off-site or on-site?
(2) If the supervision is off-site, how does the petitioner maintain such supervision, i.e. weekly calls, reporting back to main office routinely, or site visits by the petitioner?
(3) Does the petitioner have the right to control the work of the beneficiary on a day-today basis if such control is required?
(4) Does the petitioner provide the tools or instrumentalities needed for the beneficiary to perform the duties of employment?
(5) Does the petitioner hire, pay, and have the ability to fire the beneficiary?
(6) Does the petitioner evaluate the work-product of the beneficiary, i.e. progress/performance reviews?
(7) Does the petitioner claim the beneficiary for tax purposes?
*269 (8) Does the petitioner provide the beneficiary any type of employee benefits?
(9) Does the beneficiary use proprietary information of the petitioner in order to perform the duties of employment?
(10) Does the beneficiary produce an end-product that is directly linked to the petitioner's line of business?
(11) Does the petitioner have the ability to control the manner and means in which the work of the beneficiary is accomplished?
(Neufeld Memorandum, at 3-4.)
In this case, much of USCIS's apparent concern regarding the NGT petitions centered on whether Deo was, in fact, to be employed by NGT. That concern was not unfounded. Deo's employment agreement with NGT states that she "shall report to such offices or locations as assigned by Employer, and shall be available to work as needed and directed by the management of NGT or the management of the Client location where she is reporting. " (R. at US326 (emphasis added).) The possibility that Deo could have been placed at a third-party worksite supports an inference that NGT would not have had the power to "hire, pay, fire, supervise, or otherwise control" her work. 8 C.F.R. 214.2(h)(4)(ii)(2). Indeed, USCIS has found that such third-party "placements are likely to require close review in order to determine if the required relationship exists." (Neufeld Memorandum at 2.) Accordingly, USCIS reasonably requested additional information sufficient to establish that NGT would have the right to control Deo's work for the duration of her employment term. (See R. at US250 (requesting, in the NOIR, "valid contracts between the petitioner and the actual end-client firm ultimately involved with the beneficiary's computer related duties").) Ultimately, one of the stated grounds upon which USCIS revoked the Initial Petition was that NGT had purportedly failed to provide "a comprehensive description of the beneficiary's proposed duties from an authorized representative of the petitioner's client or clients." (Id. at US235.) Similarly, the AAO denied NGT's appeal, in part, because NGT supposedly failed "to specifically establish the nature of the beneficiary's employment throughout the course of the requested validity period." (Id. at US9.)
As NGT noted in its responses to USCIS, however, it actually did provide the requested information. For example, NGT provided an employment itinerary for the PIK PAC project, which stated that the project was being "developed in-house," and that Deo would report to an internal NGT manager, "Mr. Anil Pattnaik," for the duration of the project, which was expected to be completed "on or about February 2012." (Id. at US531-32.) In a response to the NOIR, NGT's counsel also represented that NGT would not be "providing the beneficiary as a consultant to SAP America, Inc." (id. at US257 (emphasis omitted) ), but rather that Deo would "work solely for [NGT] to complete this work" (id. ). NGT additionally provided an "Itinerary of Services" for the project Deo would complete for NGT/SCRD. (Id. at US143.) That itinerary states that Deo would work on that project in-house and "communicate with the end-client via internet connection." (Id. ) It also lists Deo's duties, dates of employment on the specific project, and contact information for the NGT employee who would serve as Deo's employer/supervisor for the project. (Id. ) NGT further clarified, in support of its appeal to the AAO, that
[NGT] (and not the end-client) can hire or fire the beneficiary and control the nature of her work. [NGT], and not the end-client, supervise[s] the beneficiary's work. The beneficiary reports to a supervisor *270 in [NGT's] organization, and not to someone in the end-client's organization ... the beneficiary, through internet connection, has access to the end-client's computer system and data.
(Id. at US147.)
Based on this evidence, many, if not all, of the Neufeld Factors seem to have weighed in NGT's favor. As to the first factor, NGT informed USCIS that it was intending to supervise Deo, with supervision on-site (id. at US531); this renders the second factor (the nature of supervision, if off-site) inapplicable. As to the third factor, NGT represented that, because the Project was to be completed in-house, NGT would have the exclusive right to control Deo's work on a day to day basis. (Id. at US147.) As to the fourth factor, NGT indicated that it would "provide and maintain such facilities, equipment, supplies, and personnel as it deem[ed] necessary" for the performance of Deo's duties. (Id. at US328.) As to the fifth factor, NGT informed USCIS that it would have the ability to hire, pay, and fire Deo. (Id. at US326-27.) As to the sixth factor, NGT stated that it would conduct a review of Deo's performance on a monthly basis. (Id. at US148.) As to the seventh factor, NGT stated that it was planning to issue Deo a W-2 at the end of each year, and would claim her as an employee for tax purposes. (Id. at US147.) As to the eighth factor, NGT stated that it would provide Deo with employee benefits. (Id. at US147, US165-66.) As to the ninth factor, it is likely, based on the terms of NGT's agreement with SAP, that Deo would use NGT's proprietary information in order to perform the duties of employment. (See id. at US167.) As to the 10th factor, NGT represented that the beneficiary would produce an end-product that would be directly linked to the petitioner's line of business. (Id. at US537-38.) Finally, as to the 11th factor, NGT indicated that it would have the ability to control the manner and means in which the work of the beneficiary would be accomplished. (Id. at US147.)
Based on this, it does not appear from the Record that USCIS gathered all necessary evidence, or considered "all relevant factors," in analyzing NGT's proposed employer-employee relationship with Deo. Nat'l Audubon Soc. , 132 F.3d at 14 (2d Cir. 1997).
C. Evidence That NGT Could Pay Deo the Established Wage
An employer's H1-B petition may be denied if the employer "has substantially failed" to demonstrate that it will pay the nonimmigrant employee the prevailing wage. 8 C.F.R. § 214.2(h)(4)(i)(B)(5) ; 8 U.S.C. § 212(n)(1). As noted in the USCIS Adjudicator's Field Manual,
[if the] financial condition of the petitioner is so questionable as to call into question whether the petitioner really intends to employ the alien as claimed, evidence of financial ability may be requested. This is because the financial standing of the petitioner, when taken into consideration with other factors, may be [an] indication that the petition is an accommodation and not a valid job offer.
USCIS, Adjudicator's Field Manual , Ch. 31.3(g)(5) H1-B Classification and Documentary Requirements, (Sept. 27, 2017, 11:00 AM), https://www.uscis.gov/ilink/docView/AFM/HTML/AFM/0-0-0-1/0-0-0-13593/0-0-0-13813.html# 0-0-0-511 (last visited Sept. 27, 2017 at 11 AM).
Here, it was within USCIS's discretion to discount the letter from NGT's bankruptcy attorney as insufficient to show that NGT was able to pay the beneficiary the established wage. USCIS, however, never addressed other evidence provided by Plaintiff, including a letter from an angel investor, a separate investment agreement, and a National Science Foundation grant *271 for the specific project on which Deo would be working (see R. at US78-81), that could have supported a finding that NGT would have the financial means to pay Deo as required. As the agency either failed to consider, or inexplicably discounted, a significant amount of evidence on the Record regarding NGT's financial condition, the Court cannot find that USCIS's rejection of NGT's petitions on this ground was "supported by reasonable, substantial, and probative evidence in the [R]ecord when considered as a whole." Glara , 2012 WL 352309 at *6.
Overall, USCIS's explanations of its actions are insufficient to enable the Court to determine if the agency simply failed to consider the evidence submitted by NGT that would have favored approval of its petitions, or if the agency in fact considered that evidence and, for some reason, discounted it. As USCIS did not squarely address much of NGT's evidence, or specify what additional evidence NGT could have produced to support its petitions, this Court cannot fully evaluate the agency's actions. Under these circumstances, it is appropriate for the Court to remand this matter to USCIS for reconsideration and/or a more complete explanation of (a) the revocation of its approval of NGT's Initial Petition, and (b) the denial of NGT's Second Amended Petition. See Florida Power & Light Co. v. Lorion , 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) (The "proper course" upon finding that "the agency has not considered all relevant factors ... is to remand to the agency for additional investigation or explanation."); see also Fuentes v. Holder , 548 Fed.Appx. 736, 739 (2d Cir. 2013) (remanding USCIS and Board of Immigration Appeals decisions that denied petitioner's immigration application for Temporary Protected Status, to the appropriate agency for "additional agency explanation").
IV. DEFENDANTS DID NOT VIOLATE PLAINTIFFS' DUE-PROCESS RIGHTS, AS PROPER NOTICE WAS PROVIDED.
Plaintiffs also raise a due process claim (see Compl. ¶¶ 46-48; Pl. Mem., at 17-18), alleging that USCIS's decisions continuously included "additional reasons for denial without prior notice" (Pl. Reply Mem., at 26), thereby depriving Plaintiffs of "a full and fair opportunity to present [Deo's] claims." Burger v. Gonzales , 498 F.3d 131, 134 (2d Cir. 2007). USCIS, however, did not deprive Plaintiffs of adequate notice and an opportunity to respond.
First, the agency's RFEs were "communicated by regular or electronic mail" and specified the type of additional evidence required by the agency. 8 C.F.R. § 103.2(b)(8)(iv) ; see R. at US525-28, 787-92. The RFEs also provided NGT with notice of the deadline for response. 8 C.F.R. § 103.2(b)(8)(iv) ; see R. at US525, US787 (informing NGT of the date by which it needed to respond). The information provided by USCIS was "sufficient to give [NGT and Deo, on whose behalf the petitions had been submitted] adequate notice and sufficient information to respond." Id.
Second, the content of the NOIR was in compliance with the applicable regulations. When USCIS issues an NOIR, the Notice must "contain a detailed statement of the grounds for the revocation and the time period allowed for the petitioner's rebuttal," which is 30 days. 8 C.F.R. § 214.2(h)(11)(iii)(B). In this instance, USCIS supplied a statement of the grounds for the intended revocation and duly notified NGT of its 30-day reply window to respond. (See R. at US238-44.)
Third, at other stages in the process of its consideration of NGT's petitions, USCIS consistently offered NGT opportunities to submit additional evidence in response *272 to concerns raised by the agency. (See id. at US232-37 (NOR discussing grounds of revocation and informing NGT that it could appeal the decision); id. at US23-7 (NDI notifying NGT of derogatory information of which it was unaware, which could be used as a basis for revocation by USCIS under 8 C.F.R. 103.2(b)(16)(i) ); id. at US3-10, US29-38 (AAO decisions denying NGT's appeals and informing NGT of basis for denial and that it could file a motion for reconsideration or a motion to reopen in compliance with 8 C.F.R. 103.2(b)(8)(iv) ).)
Plaintiffs, though, contend that their due-process rights were violated by the fact that, in their view, the Government's notices and decisions "continue[d] to raise new issues to which Plaintiffs had previously responded ... and were unaware were under scrutiny." (Pl. Reply Mem., at 27.) The Court finds that Plaintiffs have not shown such a due-process violation. Although the NOIR and ultimate revocation could have been more clear, it is still evident that each raised the same reasons why USCIS had determined the petitions to be insufficient. Specifically, each indicated that NGT had not provided sufficient evidence to establish that it, and it alone, would be responsible for managing Deo's work. (See R. at US121, US242.) Regardless of whether this was true or whether the evidence submitted by NGT was adequately addressed by USCIS (see Discussion above), USCIS apparently drew the conclusion that another employer/client would likely be managing Deo's work, obligating that employer/client to provide a description of the services required. (Id. ) USCIS also raised, in the NOIR, the issue of whether NGT's bankruptcy would preclude it from paying Deo the prevailing wage, and then cited the same issue as a basis for its decision in its ultimate Notice of Revocation. (Id. at US242.) The fact that, as discussed above, USCIS may have disregarded evidence supplied by NGT that would have supported a contrary determination does not support a conclusion that Plaintiffs were deprived of proper notice and opportunity to respond. U.S. ex rel. Knauff v. Shaughnessy , 338 U.S. 537, 544, 70 S.Ct. 309, 94 L.Ed. 317 (1950) (finding that an agency does not violate an alien's due-process rights when the agency's decision is in compliance with a valid regulation).
Accordingly, the Government is entitled to summary judgment dismissing Plaintiffs' due-process claim.
CONCLUSION
For the foregoing reasons, Plaintiffs' motion for summary judgment (Dkt. 26) is granted, and Defendants' cross-motion for summary judgment (Dkt. 27) is denied, to the extent that this Court finds that, in determining that NGT's Initial Petition should be revoked and its Second Amended Petition denied, USCIS disregarded or failed to explain why it discounted substantial evidence in the Record that would have potentially supported a determination that NGT had met the requirements of 8 U.S.C. § 1184(c)(1) for approval of an H1-B visa petition for the beneficiary, Deo, and that USCIS's decisions were thus arbitrary and capricious. As to Plaintiffs' due-process claim, however, Plaintiffs' motion for summary judgment is denied and Defendants' cross-motion for summary judgment is granted, and that claim is hereby dismissed with prejudice.
The Clerk of Court is directed to terminate the motions at Dkts. 26 and 27, and to remand this matter to the United States Citizenship and Immigrations Services for further proceedings consistent with this Memorandum and Order. Upon remand, USCIS is directed to reconsider its decisions regarding the H1-B visa petitions at issue here, in light of the evidence of Record favorable to Plaintiffs that is summarized *273 herein, and, if USCIS decides upon reconsideration to discount that evidence, it is directed to articulate its reasons for doing so.
SO ORDERED.

Although the caption of this case has not been changed, it is the Court's understanding that Jeh Johnson, Loretta E. Lynch, and Alejandro Mayorkas no longer hold the positions of Secretary of the Department of Homeland Security, United States Attorney General, and Director of USCIS, respectively. The Court understands that Elaine C. Duke became Acting Secretary of the Department of Homeland Security on July 31, 2017, Jeff Sessions became United States Attorney General on February 9, 2017, and James McCament became Acting Director of USCIS on March 31, 2017.

Based on this Court's review of the parties' motions, it appears that Deo's qualifications as a beneficiary pursuant to 8 C.F.R. § 2.14.2(h)(4)(iii)(C)(1)(4) are not in question. Accordingly, the Court finds no need to consider this portion of the pertinent regulations.

The background facts set forth herein are taken from the Certified Administrative Record, filed with the Court on May 13, 2016 (Dkt. 22) (referred to herein as "R." or the "Record"). For the purposes of this Memorandum and Order, the Court will cite to pages in the Record that have been numbered as "US----." Subsequent to the filing of the Record, the Government supplemented it with an additional four pages that, according to the Government, had been considered in connection with the decisions at issue in this case, but had been inadvertently omitted from the Record, as initially filed. (See Declaration of Nelsy De La Nuez, Esq., dated Dec. 12, 2016 ("Nuez Decl.") and the exhibit thereto (Dkt. 28, Ex. A).)

Under the applicable regulation, an approved "H-1B petition in a specialty occupation ... shall be valid for a period of up to three years[,] but may not exceed the validity period of the labor condition application. 8 C.F.R. § 214.2(h)(9)(iii)(A)(1).

Approval of NGT's Initial Petition did not mean that Deo was then granted, or was entitled to receive, the H-1B visa itself. Rather, several additional steps would have been necessary, before the visa could have been obtained. (See R. US239); see also U.S. Department of State, Bureau of Consular Affairs, U.S. Visas: Temporary Worker Visas , (Sept. 27, 2017, 10:04 AM), https://travel.state.gov/content/visas/en/employment/temporary.html.

In its earlier, July 18, 2009, submission, NGT had provided USCIS with an itinerary of employment for Deo. (R. at US531-32.) Based on USCIS's subsequent request, it is unclear whether the agency had reviewed the earlier-submitted document.

It appears from a date stamp on the letter that it may have been received by USCIS on October 28, 2010. (See US245.)

According to Plaintiffs, the Bankruptcy Court's Order states that NGT is "authorized to conduct its affairs and use, acquire, and dispose of property free of any restrictions of title 11 of the United States Code, the Bankruptcy Rules of Bankruptcy Procedure and/or this Court." (Motion for Summary Judgment, dated Nov. 7, 2016 ("Pl. Mem.") (Dkt. 26), at 14.) It is unclear from the Record whether Plaintiffs presented the actual Bankruptcy Court Order to USCIS for its consideration.

Although Plaintiffs seem to claim that the approval of NGT's Initial Petition meant that Deo had been conferred "H-1B status" (see Pl. Mem., at 3), the Government correctly states that the notice granting NGT's Initial Petition did "not in itself grant any immigration status and [did] not guarantee that" Deo would "be found to be eligible for a visa" (Def. Mem., at 7; see also R. US1074). The Government also notes that the Record does not show that Deo ever "obtained an H-1B visa from the consulate or otherwise obtained status as an H-1B nonimmigrant." (Def. Mem., at 7.)